STATE OF NORTH CAROLINA v. MORRIS RAY DAVIS

No. 157A85

(Filed 2 July 1986)

1. Criminal Law § 97.2— refusal to reopen evidence—no abuse of discretion

The trial judge did not abuse his discretion in a murder prosecution by refusing to reopen the evidence to permit defendant to play a tape recording of the prosecuting witness's first statement to the police where counsel for the defense failed to timely produce the necessary equipment to play the tape after more than adequate opportunity and the same evidence was placed before the jury through the use of a transcription. N.C.G.S. § 15A-1226(b) (1983).

2. Homicide § 30— first degree murder—refusal to submit second degree murder —no error

The trial court did not err in a prosecution for first degree murder by failing to instruct the jury on second degree murder where the State's evidence established that the defendant, jealous of his ex-lover's relationship with the victim, threatened to kill the victim; obtained a rifle and called his ex-lover several times on the night of the shooting; entered her apartment with a key he had managed to obtain; shot the victim once; and, while the unarmed victim staggered out of bed, shot him again with the fatal shot. This evidence belies anything other than a premeditated and deliberate killing.

PURSUANT to N.C.G.S. § 7A-27(a), defendant appeals his conviction for first degree murder for which he received a sentence of life imprisonment. The case was tried before *Smith, J.*, at the 8 October 1984 Criminal Session of Superior Court, WAKE County. Heard in the Supreme Court on 14 April 1986.

On appeal defendant brings forth two assignments of error. The first concerns denial of the defendant's request to be allowed to reopen his case in order to play for the jury a tape recording of a witness's statement made shortly after the murder. The second concerns the denial of defendant's request for a jury instruction on second degree murder. For the reasons set forth below, we find no error.

*Lacy H. Thornburg, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the State.*

*James L. Blackburn for the defendant-appellant.*

BILLINGS, Justice.

According to the evidence at trial, the victim, Curtis Winston, was a captain with the Raleigh Police Department. Shortly after midnight on 12 May 1984, Captain Winston and Karen Brown were together in the bedroom of Ms. Brown's apartment. According to Ms. Brown, she heard her apartment door open and almost immediately saw the defendant standing at her bedroom door. The defendant was pointing a rifle at Captain Winston. She heard a shot, covered her face, and, as Winston was climbing out of bed, she heard a second shot. Captain Winston died of a gunshot wound which entered his left lung, penetrated his heart and passed through his right lung.

Ms. Brown testified that she had known the defendant for a number of years and that they had lived together until March of 1984 when she had asked the defendant to move out of her apartment. After the defendant moved out, she had the locks to her apartment changed and had two sets of keys made, one of which she kept. Her apartment manager was given the other set.

For several months prior to March, Ms. Brown and the defendant had not been getting along well and Ms. Brown had begun dating Captain Winston. The defendant had been jealous of the relationship between Ms. Brown and the victim and, just prior to moving out, had threatened Ms. Brown with a gun and had beaten her. Ms. Brown also testified that defendant accosted her one morning after he had moved out, forced her into her apartment, and sexually assaulted her.

The defendant testified at trial. His recollection of the events was substantially different from Ms. Brown's. According to the defendant, Ms. Brown's relationship with Captain Winston was not good; Captain Winston had sexually assaulted her and was treating her badly; the defendant, even after he moved out of the apartment, continued to see Ms. Brown on a regular basis. On the night in question, the defendant was required to work a full shift at Central Prison where he was employed as a prison guard. Upon arriving "home" to the apartment, he let himself in with a key which Ms. Brown had given him. As he entered the bedroom, he saw a man "on top of" Ms. Brown. The man jumped up, grabbed him, and they fought for several minutes. He heard a gunshot. The man staggered to the living room, and the defend-

ant heard a second shot. Defendant maintained at trial that Ms. Brown fired the shots which killed Captain Winston but that "she didn't mean to do it."

The State introduced numerous witnesses whose testimony substantiated Ms. Brown's version of the events. In the months prior to the shooting, the defendant had written threatening notes, one of which was found on Ms. Brown's windshield and which stated: "Karen, if you care anything at all about us I ask that you please leave this nigger alone or he will destroy us forever and not ever a [sic] return. Morris." Ms. Brown had discussed her fears of the defendant with her family after defendant had beaten her and with a co-worker after the defendant had sexually assaulted her. When police officers arrived at Ms. Brown's apartment after the shooting, they found no physical evidence of a struggle, nor was there evidence when defendant was taken into custody that he had been involved in a struggle. An autopsy on the body of the victim indicated no evidence of a struggle.

[1] Defendant first contends that the trial judge committed prejudicial error in denying his motion to reopen the evidence in order to play a tape recording of Ms. Brown's first statement to police officers given to Officer Szymkewicz on 12 May 1984. During her testimony, Ms. Brown identified State's exhibit 75 as a reasonably accurate transcription of the tape recorded conversation. Following Ms. Brown's testimony, Officer Szymkewicz took the stand on Tuesday, 16 October 1984. He had with him the actual tape recording, but the tape player which he had brought with him would not play the tape. He testified that defendant's exhibit 9 was an accurate transcription of the tape recording and was identical to State's exhibit 75. Judge Smith allowed a recess which lasted about an hour during which defense counsel was unable to produce a suitable tape player. The State rested its case before lunch that day. The defense began putting on evidence that afternoon and rested its case during the morning of 17 October. The defense introduced the tape recording into evidence, but defense counsel had not made arrangements for a tape player to play the tape. The State put on its rebuttal evidence and concluded its case at about 3:30 on the afternoon of 17 October. Defense counsel was given another opportunity to play the tape, but he still had not secured a tape player. The defense rested its

case. Arguments of counsel were scheduled for 9:00 a.m. the following day. The next morning defense counsel moved to reopen the evidence for the purpose of playing the tape, and the motion was denied.

The defendant contends that the trial judge abused his discretion in denying his motion to reopen the evidence in order to permit the jury to hear this tape recording. He argues that "[t]he significance of the tape recording simply cannot be underestimated." The taped statement would, according to the defendant, corroborate his version of the events and would contradict Ms. Brown's trial testimony in the following respects: In the taped statement, Ms. Brown stated that the two men actually struggled, that she did not know "who pushed whom against the door," and that she did not remember if the defendant had a gun.

Counsel for the defense was given a transcription of the tape-recorded statement at issue which he used during an extensive cross-examination of the witness. Defense counsel eventually obtained a tape player which would accommodate the tape and actually played it during the sentencing phase of the defendant's trial. The defendant does not suggest that the transcription which was provided to him was not an accurate transcription of the tape.

During cross-examination, Ms. Brown explained that she was distraught at the time she was questioned and that in using the term "struggle," she was referring to the noises she heard as the victim staggered and fell after being shot. She also admitted during direct and cross-examination that she had covered her eyes or her face after the first shot.

We do not believe that the trial judge abused his discretion in denying defendant's motion to reopen the evidence to allow the jury to listen to this tape. The trial judge has inherent authority to supervise and control trial proceedings. The manner of the presentation of the evidence is largely within the sound discretion of the trial judge and his control of a case will not be disturbed absent a manifest abuse of discretion. *See State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983) (no abuse of discretion where trial judge read victim's statement to the jury); *State v. Goldman*, 311 N.C. 338, 317 S.E. 2d 361 (1984) (trial judge has discretion to allow either party to recall witnesses to offer additional evidence, even

after jury arguments); *see also*, N.C.G.S. § 15A-1226(b) (1983) (trial judge may, in his discretion, "permit any party to introduce additional evidence at any time prior to verdict"). In the present case, the trial judge acted within his authority, in the interests of expediting the proceedings, where counsel for the defense, after more than adequate opportunity, failed timely to produce the necessary equipment to play the tape. Furthermore, counsel was in possession of a transcription of the tape which he used extensively during cross-examination of the witness. Inasmuch as substantially the same evidence was placed before the jury at trial through use of the transcription as would have been produced by playing the tape, defendant has failed to show prejudice by the exclusion of the tape. *State v. Murray*, 310 N.C. 541, 313 S.E. 2d 523 (1984); 1 *Brandis on North Carolina Evidence*, § 30 (1982).

This assignment of error is overruled.

[2]   Defendant next contends that the facts of this case compelled the trial judge to instruct the jury on second degree murder. We disagree. In *State v. Strickland*, 307 N.C. 274, 298 S.E. 2d 645 (1983), this Court, in overruling prior decisions, held that an instruction on second degree murder was necessary only when the evidence supported such a charge. In *Strickland*, we established the following standard:

If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.

*Id.* at 293, 298 S.E. 2d at 658.

Defendant's version of the murder was calculated to convince the jury that Ms. Brown shot Captain Winston. He denied any culpability. Had the jury believed defendant, it would have been incumbent upon them to find the defendant not guilty. The State's case, if believed, compelled a verdict of first degree murder. Although Ms. Brown referred to a "struggle" in her initial statement to the police, that statement was used in an attempt to impeach her trial testimony and was not substantive evidence. *State*

*v. Tolley*, 290 N.C. 349, 226 S.E. 2d 353 (1976). *See* N.C.G.S. § 8C-1, Rules 801 and 802. The only version of the events, other than the defendant's totally exculpatory version, presented by substantive evidence at trial was of a deliberate, unprovoked killing. Not only did Ms. Brown's testimony establish each and every element of first degree murder, including premeditation and deliberation, but the State also produced numerous other witnesses to corroborate its theory. Defendant was portrayed as a jealous ex-lover. He had threatened Captain Winston by letter prior to the shooting. He had written threatening notes to Ms. Brown. He had made threatening remarks to Ms. Brown's brother. Just prior to shooting Captain Winston, defendant stated, "I told you I was going to kill you." After the shooting, defendant told Ms. Brown that Winston was "no damn good." He told Ms. Brown that the shooting was all her fault and asked her if it was worth it. Defendant also commented to a medical technician at the scene that he had "shot the son of a bitch . . . . I told him to quit f------ around."

In summary, the State's evidence established that the defendant, jealous of his ex-lover's relationship with Captain Winston, threatened to kill the victim. He obtained a rifle and, after calling Ms. Brown several times on the night of the shooting, entered her apartment with a key he had managed to obtain. He shot the victim once and, while the unarmed victim staggered out of bed, shot him again with the fatal shot. This evidence "belies anything other than a premeditated and deliberate killing." *Id.*

This assignment of error is overruled.

Defendant received a fair trial free of prejudicial error.

No error.