STATE OF NORTH CAROLINA v. MICHAEL LEMARK WARD

No. 68A99-3

(Filed 17 June 2010)

**Sentencing— capital—mental retardation—bifurcation—discretion of court**

Trial court judges have the discretion to bifurcate the issues of mental retardation and capital sentencing; the plain language of N.C.G.S. § 15A-2005 contemplates a specific chronological

order of events within the sentencing proceeding, but does not explicitly require or prohibit bifurcation of the proceeding into distinct phases. There was no abuse of discretion in denying the motion to bifurcate in this case.

Justice BRADY concurring in the result only.

Justices MARTIN and NEWBY join in this concurring opinion.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order dated 26 March 2009 entered by Judge Cy A. Grant, Sr. in Superior Court, Halifax County, denying defendant's motions for a bifurcated sentencing hearing and to preclude the State from relitigating certain issues related to a previous trial in which a jury found defendant guilty of first-degree murder. Heard in the Supreme Court 6 January 2010.

*Roy Cooper, Attorney General, by Amy Kunstling Irene, Assistant Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by Anne M. Gomez, Assistant Appellate Defender, for defendant-appellant.*

*John Rittelmeyer for Disability Rights North Carolina and The Arc of North Carolina, amici curiae.*

HUDSON, Justice.

Because N.C.G.S. § 15A-2005(e) does not explicitly prohibit a trial court from submitting the special issue of mental retardation to the jury in a bifurcated, rather than unitary, capital sentencing proceeding, we hold that the legislature has left that determination to the sound discretion of the capable trial judges of our State. Such a holding is consistent with the long-standing principle that when a statute is silent on whether to bifurcate, trial judges have the inherent authority and discretion to manage proceedings before them. Here, the record does not reflect an abuse of that discretion. Accordingly, we affirm the decision of the trial court to deny defendant's motion to bifurcate his sentencing proceeding.

## Background

In 1998 defendant was convicted of the 1996 first-degree felony murder of Patricia Smith King, conspiracy to commit murder, robbery with a dangerous weapon, felonious breaking or entering, felonious

larceny, felonious possession of stolen goods, and felonious conspiracy to commit breaking or entering and larceny. A full statement of the facts of this case can be found in this Court's prior opinion. *See State v. Ward*, 354 N.C. 231, 238-43, 555 S.E.2d 251, 257-60 (2001). Following a capital sentencing proceeding, the jury returned a binding recommendation that defendant be sentenced to death.

Upon review, this Court found no prejudicial error in the guilt-innocence phase of defendant's trial, but did find error in the sentencing proceeding and remanded the case for a new capital sentencing proceeding. *Id.* at 237-38, 555 S.E.2d at 257. On remand, defendant moved that the trial court bifurcate his sentencing proceeding so that the jury would hear evidence concerning defendant's alleged mental retardation, be charged on that issue, and determine whether he is, in fact, mentally retarded prior to proceeding to the evidence of aggravating and mitigating circumstances. The trial court denied defendant's motion. On 27 August 2009, we allowed defendant's petition for writ of certiorari to the Court concerning the denial of his motion to bifurcate, as well as the denial of his motion to preclude the State from presenting evidence at the sentencing proceeding relating to the issues of premeditation, deliberation, and the identity of the shooter. As to the latter issue, we conclude that certiorari was improvidently allowed.

## Analysis

In the context of the sentencing proceeding following the guilt-innocence phase of a capital trial, *see* N.C.G.S. § 15A-2000 (2009), the General Assembly has provided:

> (e) If the court does not find the defendant to be mentally retarded in the pretrial proceeding [as outlined in N.C.G.S. § 15A-2005(c)], upon the introduction of evidence of the defendant's mental retardation during the sentencing hearing, the court shall submit a special issue to the jury as to whether the defendant is mentally retarded as defined in this section. *This special issue shall be considered and answered by the jury prior to the consideration of aggravating or mitigating factors and the determination of sentence.* If the jury determines the defendant to be mentally retarded, the court shall declare the case noncapital and the defendant shall be sentenced to life imprisonment.

N.C.G.S. § 15A-2005(e) (2009) (emphasis added). A plain reading of these words shows that the statute suggests a single sentencing pro-

ceeding—"during *the* sentencing hearing"—while at the same time using language that indicates a required sequence of events within that proceeding: "*upon the introduction* of evidence . . . , the court shall submit a special issue" that "shall be considered *and answered . . . prior to* the consideration of . . . and the determination of sentence." *Id.* Unlike N.C.G.S. § 15A-2000, which explicitly provides that a capital trial must take place in two separate phases, first the determination of guilt or innocence, followed by the determination of sentence, N.C.G.S. § 15A-2005 is silent—and indeed inherently ambiguous—regarding whether these stages may or must take place in a unitary or bifurcated proceeding.

When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself:

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.

*Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006). An ambiguous provision, such as at issue here, leads us in turn to the general rule that, " '[i]n discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever possible.' " *State v. Abshire*, 363 N.C. 322, 330, 677 S.E.2d 444, 450 (2009) (quoting *State v. Jones*, 359 N.C. 832, 836, 616 S.E.2d 496, 498 (2005) (alteration in original) (citation omitted)). For example, subsection (g) of N.C.G.S. § 15A-2005 also indicates that the question of mental retardation must be *both* considered *and* decided by the jury prior to the "consideration of aggravating and mitigating factors" pursuant to N.C.G.S. § 15A-2000(e) and (f):

> (g) *If the jury determines that the defendant is not mentally retarded* as defined by this section, *the jury may consider* any evidence of mental retardation presented during the sentencing hearing *when determining aggravating or mitigating factors* and the defendant's sentence.

N.C.G.S. § 15A-2005(g) (2009) (emphases added). If the jury determines that the defendant is in fact mentally retarded, then it need not consider evidence of aggravating and mitigating circumstances, because the trial judge must impose a life sentence.

STATE v. WARD

[364 N.C. 157 (2010)]

Reading this statute to mandate a unitary sentencing proceeding discounts—or at the least underemphasizes—the critical phrase "and answered" in N.C.G.S. § 15A-2005(e). *Cf. N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) ("Because the actual words of the legislature are the clearest manifestation of its intent, *we give every word of the statute effect, presuming that the legislature carefully chose each word used.*" (emphasis added) (citation omitted)). Such a reading also disregards the additional words in subsection (g) indicating that, when retardation has been raised as a defense, the jury must "determine" the special issue of mental retardation—first as a separate issue, and then again as an aspect of "determining" the existence of aggravating and mitigating circumstances.

We read this language as envisioning a procedure in which evidence of aggravators is introduced—as well as considered—after the special issue of mental retardation has been answered. Indeed, the pattern jury instructions for capital sentencing proceedings in North Carolina recognize this ambiguity and provide trial judges the flexibility to modify jury instructions in capital cases accordingly. *See* 1 N.C.P.I.—Crim. 150.05 (2001) ("Death Penalty—Mental Retardation Jury Determination (with Special Verdict Form)")[1] (with an opening note stating that "[t]his instruction is written in a manner which contemplates that the jury will return to court with its answer to the mental retardation question before hearing arguments and being instructed [on aggravating and mitigating factors and determination of sentence]. *If the trial judge chooses to use a different procedure,* this instruction should be modified accordingly." (emphasis added)); *id.* ("The one issue for you to determine at this stage of the proceedings reads: 'Is the defendant, *(name)*, mentally retarded?' "; "Your answer to this mental retardation issue, either 'yes' or 'no,' must be unanimous."); 1 N.C.P.I.—Crim. 150.10 ("Death Penalty—Instructions to Jury at Separate Sentencing Proceeding") (2004) ("Members of the jury, [having found the defendant guilty of] murder in the first degree [and the defendant having been determined by you not to be mentally retarded], it is now your duty to recommend to the Court whether the defendant should be sentenced to death or to life imprisonment.").

While these pattern jury instructions are not binding on this Court, they were drafted by a committee of the very same superior

---

1. An interim version of these instructions, dated November 2009, may be found at http://www.sog.unc.edu/programs/ncpji/documents/r150.05_11_2009.p df. The portions quoted here remain unchanged in the interim version.

court judges who oversee capital sentencing proceedings, and they demonstrate these judges' ability to exercise discretion sensibly. In the instructions crafted after N.C.G.S. § 15A-2005 was enacted in 2001, these trial judges have acknowledged the ambiguity in the statute and have addressed it in a careful manner. The instructions maintain consistent treatment of all capital defendants while also allowing for the type of "guided discretion" and "particularized consideration of the relevant aspects of the character and record of a convicted defendant" that we have held is critical to the constitutionality of our death penalty procedures. *State v. Barfield*, 298 N.C. 306, 35-52, 259 S.E.2d 510, 542-43 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986).

The plain language of N.C.G.S. § 15A-2005 indicates that the jury will make two separate determinations, at two distinct points during the sentencing proceeding: first, on the special issue of mental retardation, and next, only if the defendant is found not to be mentally retarded, the sentence to be imposed. Allowing trial courts the discretion to bifurcate such proceedings gives proper weight to the words "and answered," which also appear in the statute before the phrase "prior to the consideration of aggravating or mitigating factors and the determination of sentence." Surely the General Assembly chose to require that the special issue of mental retardation be *answered* to indicate that the sentencing proceeding follow a specific sequence of events. By mandating that the jury first consider *and answer* the special issue on mental retardation, N.C.G.S. § 15A-2005(c) does not preclude a bifurcated proceeding, but rather contemplates that only after completing and returning a "not mentally retarded" verdict on the first issue may the jury even begin to consider evidence of aggravating and mitigating factors.

The evidence presented to the jury on these questions may overlap somewhat, particularly concerning the defendant's adaptive functioning skills and whether the perpetration and details of the crime reflect those skills. *See* N.C.G.S. § 15A-2005(a)(1)a. (2009) (defining mentally retarded as "[s]ignificantly subaverage general intellectual functioning, existing concurrently with significant limitations in adaptive functioning"). However, the evidence is also likely to be appreciably different, as "[t]he defendant has the burden of proving significantly subaverage general intellectual functioning, significant limitations in adaptive functioning, and that mental retardation was manifested before the age of 18," which will typically be unrelated to

the details of the crime. *Id.* § 15A-2005(a)(2) (2009). It seems reasonable that the legislature intended to allow for a trial court, in overseeing the sequence of events envisioned in N.C.G.S. § 15A-2005(e), to wait until receiving a negative answer to the question of a defendant's mental retardation before expending time and resources on the presentation of evidence of aggravating and mitigating circumstances. *See* N.C.G.S. § 15A-2005(e) ("If the jury determines the defendant to be mentally retarded, the court shall declare the case noncapital and the defendant shall be sentenced to life imprisonment."). In light of this conditionality, that the jury only need consider aggravating and mitigating factors if it finds that the defendant is not mentally retarded, a trial judge might determine, in a case in which the evidence of mental retardation is particularly strong, that bifurcation would best promote judicial economy in that the need for the second phase could well be obviated.

In another instance, a trial court might determine that bifurcation would be the best means of avoiding undue prejudice. For example, when the evidence of aggravation is especially gruesome or heinous, the judge could conclude that viewing or hearing such evidence might unduly prejudice the jury in its determination of the issue of mental retardation. In connection with the issue of mental retardation, the jury will necessarily hear evidence about the defendant's intelligence quotient (IQ) and capabilities or limitations in "the following adaptive skills areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure skills and work skills." *Id.* § 15A-2005(a)(1)b. (2009). By contrast, the State's evidence of aggravating circumstances will focus on the worst aspects of the offense itself, much of which may be entirely irrelevant to the issue of mental retardation.[2] Because of this difference in subject matter, from the capacity of the defendant to the circumstances of the crime itself, a trial judge may sometimes deem it appropriate to conduct the sentencing proceeding in two phases to ensure the issues are considered and answered separately.

We have recognized the discretion of trial courts to conduct bifurcated proceedings, or the propriety of that approach, in a num-

---

2. Although N.C.G.S. § 15A-2000(a)(3) provides, in part, that "all such evidence [from the guilt determination phase] is competent for the jury's consideration in passing on punishment," it limits the evidence during the sentencing proceeding to "any matter that the court deems relevant to *sentence*." (Emphasis added.) The statute does not provide that such evidence is competent or relevant for the jury's consideration in passing on the special issue of mental retardation.

ber of other contexts. *See, e.g., In re Will of Barnes*, 358 N.C. 143, 143, 592 S.E.2d 688, 689 (2004) (per curiam) (reversing the Court of Appeals based on the reasoning in the dissent, which would have affirmed the trial court's exercise of discretion in managing a trial by bifurcating the proceedings); *In re Will of Hester*, 320 N.C. 738, 742-43, 360 S.E.2d 801, 804-05 (1987) (noting that North Carolina Civil Procedure Rule 42(b) gives trial courts "extremely broad" discretion to sever or bifurcate civil proceedings when doing so "furthers convenience and avoids prejudice" (citation omitted)); *Barfield*, 298 N.C. at 350, 259 S.E.2d at 541-42 (recognizing the constitutionality of statute mandating bifurcated capital trial proceedings); *In re White*, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38 (citing *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984), and noting that when the statutes do not specify how the proceedings are to be conducted, but only that both stages must occur, trial judges may conduct the adjudication and disposition stages of a termination of parental rights proceeding concurrently, or they may hold a bifurcated proceeding in which the stages take place separately), *disc. rev. denied*, 318 N.C. 283, 347 S.E.2d 470 (1986); *see also State v. Kilby*, —— N.C. App. ——, —— n.5, 679 S.E.2d 430, 433 n.5 (2009) (observing that "the wording of the statute" outlining the satellite-based monitoring program for sexual offenders, N.C.G.S. § 14-208.40B(c), allows for either a bifurcated or single proceeding, to take place in "two phases," with that determination left to the trial judge).

Like the statute at issue here, the statutes in each of these situations either explicitly provide for bifurcated proceedings or plainly contemplate that the proceeding take place in stages or phases. Thus, our case law demonstrates that, even bifurcated, a hearing is still treated as the same single proceeding or trial. *See, e.g., In re Will of Hester*, 320 N.C. at 745, 360 S.E.2d at 806 ("Simple bifurcation of the sub-issues does not create two proceedings. In a bifurcated trial the entire action and all issues therein remain under the control of one court; bifurcation of issues normally results in only one judgment." (citation omitted)). The outcome here is consistent with our language in *Hester*: Whether or not the trial court bifurcates a sentencing proceeding, defendant will receive one, single sentencing judgment.[3]

We have stated that a "bifurcated trial is particularly appropriate where separate submission of issues avoids confusion and promotes

---

3. N.C.G.S. § 15A-2005(c) also allows for the possibility of a pretrial hearing on mental retardation to take place before the sentencing hearing, making such a pretrial hearing mandatory if the State consents. If the State does not agree, the trial court, in its discretion, may still order a pretrial hearing upon a motion by the defendant.

a logical presentation to the jury and where resolution of the separated issue will potentially dispose of the entire case." *Id.* at 743, 360 S.E.2d at 804 (citations omitted). Such an approach is also consistent with our recognition that trial judges have broad discretion to supervise and organize the proceedings before them:

> · The paramount duty of the trial judge is to supervise and control the course of the trial so as to prevent injustice. In discharging this duty, the court possesses broad discretionary powers sufficient to meet the circumstances of each case. This supervisory power encompasses the authority to structure the trial logically and to set the order of proof. Absent an abuse of discretion, the trial judge's decisions in these matters will not be disturbed on appeal.

*Id.* at 741-42, 360 S.E.2d at 804 (citations omitted). This Court has long emphasized the inherent authority and discretion of trial judges:

> [A trial judge] is clothed with this power because of his learning and integrity, and of the superior knowledge which his presence at and participation in the trial gives him over any other forum. However great and responsible this power, the law intends that the Judge will exercise it to further the ends of justice, and though doubtless, it is occasionally abused, it would be difficult to fix upon a safer tribunal for the exercise of this discretionary power, which must be lodged somewhere.

*Moore v. Edmiston,* 70 N.C. 382, 390, 70 N.C. 470, 481 (1874); *see also State v. Davis,* 317 N.C. 315, 318, 345 S.E.2d 176, 178 (1986) ("The trial judge has inherent authority to supervise and control trial proceedings. The manner of the presentation of the evidence is largely within the sound discretion of the trial judge and his control of a case will not be disturbed absent a manifest abuse of discretion." (citations omitted)); *State v. Blackstock,* 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985) ("In this connection it is well settled that it is the duty of the trial judge to supervise and control the course of a trial so as to insure justice to all parties.").

Equally important, we have recently noted in a capital case that "heightened attention to procedural safeguards is necessary in cases of alleged mental retardation in order to protect against the inadvertent and unconstitutional execution of mentally retarded defendants." *State v. Locklear,* 363 N.C. 438, 461, 681 S.E.2d 293, 310 (2009). Only if we recognize the silence on bifurcation in N.C.G.S. § 15A-2005, and afford trial judges the discretionary flexibility to

bifurcate the proceedings, do we conform with our recent jurisprudence in *Locklear*. Likewise, our seminal opinion in *State v. Barfield*, emphasizing the constitutional necessity of "particularized consideration of the relevant aspects of the character and record of a convicted defendant" in the application of the death penalty, 298 N.C. at 351, 259 S.E.2d at 542, requires us to resolve the ambiguity in N.C.G.S. § 15A-2000(e) by recognizing the "guided discretion" of trial judges to ensure a fair and impartial jury determination of a particular defendant's characteristics, including his possible mental retardation.

In *Locklear* this Court also recognized the cautionary advice given by the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304, 153 L. Ed. 2d 335 (2002), which struck down as unconstitutional the execution of mentally retarded defendants:

> Identifying mentally retarded offenders can be an inherently difficult task requiring particular attention to procedural safeguards. *See Atkins*, 536 U.S. at 317, 153 L. Ed. 2d at 348 (noting that "some characteristics of mental retardation undermine the strength of the procedural protections that our capital jurisprudence steadfastly guards"). The difficulty of this task increases the likelihood that mentally retarded offenders will be unconstitutionally sentenced to death. *See id.* at 321, 153 L. Ed. 2d at 350 ("Mentally retarded defendants in the aggregate face a special risk of wrongful execution.").

*Locklear*, 363 N.C. at 464, 681 S.E.2d at 312. Trial judges are best situated to evaluate the evidence presented of a defendant's mental retardation,[4] and to determine if bifurcating the sentencing proceeding into two distinct phases would promote both fairness and the interests of justice.

The record here reflects that, before denying defendant's motion for bifurcation, the trial judge heard extensive, well-reasoned argument on the issue from both, the prosecution and the defense. Defendant's trial counsel explicitly outlined what such a bifurcated proceeding would look like, reasoning to the trial court:

> Let's go ahead and determine up front [defendant's mental retardation]. Put on the evidence that goes towards mental retardation: let's talk about that. And then if the jury finds that, that is

---

4. Indeed, N.C.G.S. § 15A-2000(a)(3) gives great deference to the trial court's ability to evaluate what evidence is relevant to the sentence under consideration, providing that "[a]ny evidence which the court deems to have probative value may be received."

**STATE v. WARD**

[364 N.C. 157 (2010)]

fine. If they don't find that, at least they had a chance to determine that issue without a lot of other baggage and those types of things coming in, and then we proceed. [The State] would not have to put the witness on a second time. The same juror has heard that [evidence of mental retardation]. We are not losing any time.

I am just asking that that issue [of mental retardation] be determined up front without allowing the state [sic] to put everything in that they possibly would to try to inflame a jury and try to get them all jacked up ready to do anything. Let's focus on this issue.

Notwithstanding these arguments, the trial court denied defendant's motion. Nothing in the record or transcript indicates that the trial court's decision was arbitrary or "manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (citing *Clark v. Clark*, 301 N.C. 123, 271 S.E.2d 58 (1980)). Nor is there any suggestion that the trial court erroneously believed it lacked the discretion to grant the motion. *State v. Johnson*, 346 N.C. 119, 124, 484 S.E.2d 372, 376 (1997) ("[T]here is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented." (citations and internal quotation marks omitted)). Accordingly, we see no abuse of discretion in the trial court's decision to deny defendant's motion to bifurcate the sentencing proceeding.

## Conclusion

Because the plain language of N.C.G.S. § 15A-2005 contemplates a specific chronological order of events within the sentencing proceeding, but does not explicitly require or prohibit bifurcation of the proceeding into distinct phases, we hold that our State's trial judges have the discretion to determine whether to bifurcate the issues of mental retardation and sentence. Because we discern no abuse of discretion here, we affirm the trial court's order denying defendant's motion to bifurcate.

AFFIRMED IN PART; CERTIORARI IMPROVIDENTLY ALLOWED IN PART.

Justice BRADY concurring in the result only.

The imposition of a sentence of death is the most serious punishment that can be meted out by the State of North Carolina. Ac-

cordingly, every measure must be taken to ensure that all defendants are treated uniformly and consistently when at all possible. In the case *sub judice* the majority opens the door for vastly inconsistent procedures in capital sentencing proceedings across the State by allowing superior court judges the discretion to deviate from the bounds of the clearly defined statutory procedure set out by the General Assembly. Because this statutory framework does not allow the trial court the discretion to bifurcate a capital sentencing proceeding into a proceeding on mental retardation issues and then a separate proceeding on all other sentencing issues, I concur only in the result of the Court's opinion.

In 2001 the North Carolina General Assembly determined that those convicted of first-degree murder may not be sentenced to death if it is shown that the defendant is mentally retarded. N.C.G.S. § 15A-2005 (2009). The burden of proof in mental retardation issues rests upon the defendant. *Id.* § 15A-2005(a)(2). Upon a defendant's motion that is supported by appropriate affidavits, the trial court "may order a pretrial hearing to determine if the defendant is mentally retarded." *Id.* § 15A-2005(c). If the trial court finds the defendant to be mentally retarded in the pretrial hearing, the State may not proceed capitally. *Id.* However, if the trial court does not find the defendant to be mentally retarded in a pretrial hearing, the issue may be raised again and evidence presented during the sentencing hearing. N.C.G.S. § 15A-2005(e). The issue in the instant case is whether the trial court is required to, or has the discretion to, submit the special issue on mental retardation to the sentencing jury before the presentation of any evidence concerning aggravating and mitigating circumstances.

My analysis turns upon a correct interpretation of N.C.G.S. § 15A-2005(e), which states:

> If the court does not find the defendant to be mentally retarded in the pretrial proceeding, upon the introduction of evidence of the defendant's mental retardation during the sentencing hearing, the court shall submit a special issue to the jury as to whether the defendant is mentally retarded as defined in this section. This special issue shall be considered and answered by the jury prior to the consideration of aggravating or mitigating factors and the determination of sentence. If the jury determines the defendant to be mentally retarded, the court shall declare the case noncapital and the defendant shall be sentenced to life imprisonment.

N.C.G.S. § 15A-2005(e). This Court's method of statutory construction is well settled.

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.

*Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citing *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) and *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) ("The best indicia of that intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.")). "Because the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect, presuming that the legislature carefully chose each word used." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (citing *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188, 594 S.E.2d 1, 20 (2004)). I conclude that the language of N.C.G.S. § 15A-2005(e) is clear and unambiguous.

When, as here, defendant is not found to be mentally retarded during a pretrial proceeding, the trial court is required under section 15A-2005(e) to submit a separate issue on mental retardation "during the sentencing hearing" if a defendant introduces "evidence of the defendant's mental retardation." This plain language indicates that the General Assembly provided a means for giving the jury a special issue on mental retardation if the defendant presented evidence of mental retardation during the sentencing hearing, not in a hearing that occurs before the sentencing hearing. The statute requires that the trial court instruct the jury to determine the issue of mental retardation before considering the aggravating and mitigating evidence and determining the defendant's sentence. The statute, however, does not provide a procedure for the addition of a separate hearing before the sentencing hearing. Instead, the statute provides a mechanism for the evidence of mental retardation to be presented as part of the defendant's case during the sentencing proceeding. The legislature was well aware that in capital sentencing proceedings the State presents evidence of aggravating circumstances before a defendant's introduction of mitigating evidence. Thus, the General Assembly

intended that evidence of mental retardation would be introduced by a defendant after the State presented its evidence of aggravators.

Moreover, I am not convinced that the word "consideration" in the statute can be taken to mean that the jury may not *hear* evidence of aggravation or mitigation before its deliberation and determination of the mental retardation issue. The jury considers evidence of aggravation and mitigation after hearing all the evidence, being instructed "that it must *consider* any aggravating circumstance or circumstances or mitigating circumstance or circumstances" provided under N.C.G.S. § 15A-2000(e) and (f), N.C.G.S. § 15A-2000(b) (2009) (emphasis added), and after determining whether defendant is mentally retarded, *id.*; N.C.G.S. § 15A-2005(e). Simply viewing or hearing the evidence presented and introduced is not tantamount to a "consideration" of that evidence as envisioned by N.C.G.S. § 15A-2005(e). *See* The New Oxford American Dictionary 363 (2d ed. 2005) (defining consideration as "careful thought, typically over a period of time").

Defendant asserts that even if there is no statutory mechanism for bifurcating the hearing, this Court's decision in *State v. Blackwell*, 361 N.C. 41, 638 S.E.2d 452 (2006), *cert. denied*, 550 U.S. 948 (2007), would give the trial court the discretion to do so. I disagree. In *Blackwell* this Court established that a special verdict would be a proper way for a trial court to instruct a jury to consider aggravating factors in Structured Sentencing cases not subject to the *"Blakely* Act." *Id.* at 45-49, 638 S.E.2d at 455-58. *Blackwell* was governed by the decision in *Blakely v. Washington*, 542 U.S. 296 (2004), which required the jury to find aggravating factors used to enhance the defendant's sentence; however, *Blackwell* was not governed by the *"Blakely* Act," codified at N.C.G.S. §§ 15A-924(a), -1022.1, -1340.14, and -1340.16 (2005), which set out the procedure for doing so. Since, at the time, the statutes were silent on the issue, this Court reasoned that the trial court had the authority to use the common-law procedural mechanism of a special verdict to determine the existence of aggravators and thus comport with the mandate of the Supreme Court of the United States.

However, in this case the General Assembly has spoken, and there is a statutory mechanism. That statutory mechanism is that during defendant's presentation of evidence in the sentencing proceeding, if there is evidence introduced tending to show that defendant is mentally retarded, the trial court must submit a special issue to the jury to be considered and answered prior to any consideration of aggravating or mitigating circumstances and the determination of

sentence. Because the General Assembly has clearly spoken, trial courts are not allowed to deviate from that procedure. *See* N.C. Const. art. IV, § 13(2). Thus, the trial court had no discretion to bifurcate the sentencing hearing and properly denied defendant's motion.

Although the legislature could have elected to vest trial courts with discretion to trifurcate capital trials, it did not choose to do so. Instead, the legislature has established specific and comprehensive procedures for capital proceedings. *See* N.C.G.S. § 15A-2000 (2009). Under these statutory procedures, "upon conviction or adjudication of guilt of a defendant of a capital felony . . . the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment." *Id.* § 15A-2000(a)(1). The supplemental provisions for capital mental retardation determinations do not authorize, or even mention, adding a third, separate proceeding before the jury. *See id.* § 15A-2005. When, as here, the State metes out the most serious punishment recognized under our criminal law, capital defendants should be treated uniformly and provided "a separate sentencing proceeding." *Id.* § 15A-2000(a)(1); *see also Gregg v. Georgia*, 428 U.S. 153, 188 (1976) ("Because of the uniqueness of the death penalty, . . . it [cannot] be imposed under sentencing procedures that create[] a substantial risk that it would be inflicted in an arbitrary and capricious manner.").

### CONCLUSION

Because trial courts do not have the discretion to bifurcate capital sentencing proceedings for the purpose of having the jury hear only evidence of mental retardation and then make a determination on that issue before the introduction of aggravating and mitigating circumstances, I concur only in the result reached by the majority's opinion.

Justices MARTIN and NEWBY join in this concurring opinion.