IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-308

Filed: 17 December 2019

Cabarrus County, No. COA19-308

JVC ENTERPRISES, LLC, as successor by merger to GEOSAM CAPITAL US, LLC; CONCORD APARTMENTS, LLC; and THE VILLAS OF WINECOFF, LLC f/k/a THE VILLAS AT WINECOFF, LLC, Plaintiffs,

v.

CITY OF CONCORD, Defendant.

Appeal by Plaintiffs and cross-appeal by Defendant from an order entered on 10 October 2018 by Judge Joseph N. Crosswhite in Cabarrus County Superior Court. Heard in the Court of Appeals 18 September 2019.

> *Scarbrough & Scarbrough, PLLC, by James E. Scarbrough, John F. Scarbrough, and Madeline J. Trilling, and Ferguson, Hayes, Hawkins & DeMay, PLLC, by James R. DeMay, for Plaintiffs-Appellants.*

> *Hamilton Stephens Steele + Martin, PLLC, by Keith J. Merritt, for Defendant-Appellee.*

INMAN, Judge.

JVC Enterprises, LLC, Concord Apartments, LLC, and the Villas of Winecoff, LLC, ("Plaintiffs") appeal the entry of summary judgment in favor of the City of Concord (the "City") and dismissing Plaintiffs' complaint. The City cross-appeals a portion of the summary judgment order, contending the trial court impermissibly ruled on the constitutionality of a session law. After careful review, and able

argument on behalf of the parties, we reverse the trial court's entry of summary judgment for the City and remand for further proceedings.

## I. FACTUAL & PROCEDURAL HISTORY

The record below discloses the following:

In 2004, the City enacted an ordinance requiring developers of residential subdivisions to pay water and wastewater capacity fees as a prerequisite for development approval by the City. The City assessed these fees at the pre-development stage, and developers were required to pay them before a subdivision plat would be accepted for recordation. The fees were distinct from ordinary installation and meter fees, as they were collected prior to the provision of water and sewer service and were used to fund future improvements to the City's water and sewer systems. Plaintiffs are all developers who built residential subdivisions inside the City prior to October of 2016. Each of the Plaintiffs paid the capacity fees required by the City's ordinance prior to development.

On 19 August 2016, our Supreme Court decided *Quality Built Homes, Inc. v. Town of Carthage*, 369 N.C. 15, 789 S.E.2d 454 (2016), and held that although cities could assess fees for water and sewer services actually furnished under the Public Enterprise Statutes, N.C. Gen. Stat. §§ 160A–11 to –338 (2015), those enabling statutes "fail[ed] to give [cities] the essential prospective charging power necessary to assess impact fees." *Quality Built Homes,* 369 N.C. at 22, 789 S.E.2d at 459. The

City subsequently amended its capacity fee ordinance in response to *Quality Built Homes* in October of 2016, changing the timing of the collection of the fees from before the subdivision plat approval phase to before the issuance of a zoning clearance permit.

In 2017, Plaintiffs brought suit against the City seeking, among other things, a judgment declaring the fees *ultra vires* and awarding damages in the amount of fees paid to the City in connection with their developments. Three similar cases[1] were also filed against the City, and all parties filed a Joint Motion for Exceptional Case Designation under Rule 2.1 of the General Rules of Practice for the Superior and District Courts. That motion was granted in April 2018.

The City moved for partial summary judgement on 17 September 2018 on Plaintiffs' claim that the City lacked authority to levy the fees. To support its motion, the City filed an affidavit by the city clerk which included as exhibits five session laws amending, revising, or consolidating the City's charter between 1959 and 1986. The first such session law authorized a now-defunct Board of Light and Water Commissioners of the City of Concord (the "Board") "[t]o fix and collect rates, fees and charges for the use of and for the services and facilities furnished *or to be furnished*

---

[1] Those three cases were also appealed and are resolved consistent with this opinion in separate decisions filed today. *Bost Realty Co. v. City of Concord*, No. COA19-309 (N.C. Ct. App. Dec. 17, 2019) (unpublished); *Journey Capital, LLC v. City of Concord*, No. COA19-310 (N.C. Ct. App. Dec. 17, 2019) (unpublished); *Metro Development Group, LLC v. City of Concord*, No. COA19-311 (N.C. Ct. App. Dec. 17, 2019) (unpublished).

in the form of electrical and water service." 1959 N.C. Sess. Laws ch. 66, § 1 (emphasis added).[2] Another session law attached to the affidavit revised and consolidated the City's charter, continued the existence of the Board and its powers, and repealed 108 scattered private, public, and session laws that previously composed the City's charter. 1977 N.C. Sess. Laws ch. 744, §§ 1, 5-6 (hereinafter the "1977 Charter"). A third session law—the one on which the City premised its motion for summary judgment—again consolidated the City's charter, dissolved the Board, and provided that "[a]ll powers and duties of said Board shall become powers and duties of the City of Concord[,]" 1985 N.C. Sess. Laws. ch. 861 § 2 (1986) (hereinafter the "1986 Act");[3] at the same time, that session law also expressly repealed all but two sections of the 1977 Charter. *Id.* at §§ 2, 6.

At the summary judgment hearing, the City argued that it was authorized to assess the capacity fees because the session laws: (1) authorized the Board to levy prospective water and sewer fees; and (2) transferred those powers to the City in the 1986 Act. Plaintiffs countered by arguing the 1986 Act: (1) extinguished the Board; and (2) eliminated any power to levy prospective fees allowed in the 1977 Charter by repealing that charter. Plaintiffs further contended that the "powers and duties of

---

[2] An earlier session law allowed the Board to levy prospective fees for sewer service. 1955 N.C. Sess. Laws ch. 1180, § 1.

[3] Although the session law is contained in the 1985 volume of the North Carolina Session Laws, it was ratified and made effective by the General Assembly in 1986. 1985 N.C. Sess. Laws ch. 861, § 12.

said Board" that the 1986 Act transferred to the City were simply those powers that would have otherwise resided in the Board consistent with the general Public Enterprise Statutes. Plaintiffs relied on the doctrine of constitutional avoidance, asserting that the City's interpretation of the pertinent session laws ran the risk of violating the North Carolina Constitution's prohibition against local acts relating to health and sanitation. *See* N.C. Const. art. II, § 24(1)(a).

The trial court granted summary judgment in the City's favor and dismissed all of Plaintiffs' claims with prejudice on 10 October 2018. In its order, the trial court construed the 1986 Act as transferring the Board's ability to levy prospective fees to the City; it then interpreted two local act decisions by our Supreme Court, *Town of Boone v. State*, 369 N.C. 126, 794 S.E.2d 710 (2016), and *City of Asheville v. State*, 369 N.C. 80, 794 S.E.2d 759 (2016), and concluded that the 1986 Act was constitutional. Plaintiffs appealed the order in its entirety, while the City cross-appealed the portion of the order addressing the constitutionality of the 1986 Act.

## II. <u>ANALYSIS</u>

*A. Standard of Review*

We review the trial court's entry of summary judgment *de novo*, and will affirm the ruling "when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of*

*Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted).

The *de novo* standard also applies to questions of statutory interpretation. *Armstrong v. State Bd. of Dental Examiners*, 129 N.C. App. 153, 156, 499 S.E.2d 462, 466 (1998). In discerning the effect of a statute, we "look[ ] first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010) (citation omitted). "When determining the extent of legislative power conferred upon a municipality, the plain language of the enabling statute governs." *Quality Built Homes*, 369 N.C. at 19, 789 S.E.2d at 457 (citation omitted). If the statutory language is unambiguous, we apply its "plain and definite meaning. *Id.* (citation and quotation marks omitted). "But where a statute is ambiguous or unclear in its meaning, resort must be had to judicial construction to ascertain the legislative will, and the courts will interpret the language to give effect to the legislative intent." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 389 (1978) (citations omitted). Canons of statutory interpretation are employed "[i]f the language of the statute is ambiguous or lacks precision, or is fairly susceptible of two or more meanings[.]" *Abernethy v. Bd. of Comm'rs*, 169 N.C. 631, 636, 86 S.E. 577, 580 (1915).

B. *Plaintiffs' Appeal*

Plaintiffs first contend that the 1977 Charter failed to give the Board authority to charge prospective water and sewer fees. Alternatively, Plaintiffs argue that the

provisions in the 1986 Act revoking the 1977 Charter's grant of powers to the Board but transferring the Board's powers to the City created an ambiguity as to what powers were actually conveyed to the City by the General Assembly. We address each argument in turn.

We disagree with Plaintiffs' assertion that the 1977 Charter did not authorize the Board to levy fees for future service. The 1977 Charter enabled the Board to:

> Fix and collect rates, fees and charges for the use of and for the services and facilities furnished *or to be furnished* in the form of electrical, sewer and water service to be paid by the owner, tenant or occupant of each lot or parcel of land which *may be served* by such electrical, sewer and water facilities[.]

1977 N.C. Sess. Laws ch. 744, § 1 (emphasis added). Plaintiffs interpret the phrase "to be paid by the owner, tenant or occupant of each lot or parcel of land which may be served" as limiting the Board to charging fees for services currently provided. But the words "owner, tenant or occupant . . . which may be served" encompass persons currently served as well as those who may be served in the present or future. That language aligns with—rather than limits—the Board's authority under the 1977 Charter to levy prospective fees for "services and facilities furnished or to be furnished." *Cf. McNeill v. Harnett Cty.*, 327 N.C. 552, 570, 398 S.E.2d 475, 485 (1990) (holding that the language "to be furnished" in the Public Enterprise Statutes applicable to county water and sewer districts authorized said districts to levy prospective fees); *Quality Built Homes*, 369 N.C. at 20-21, 789 S.E.2d at 458 (holding

that the Public Enterprise Statutes applicable to cities did not allow for prospective water and sewer fees because it lacked "the essential 'to be' language" (citation omitted)). Construing these phrases *in pari materia* as we must to give effect to each, *State v. Johnson*, 278 N.C. 126, 145, 179 S.E.2d 371, 383 (1971), we hold the 1977 Charter provided the Board with authority to levy prospective fees.

We agree with Plaintiffs that the 1986 Act is ambiguous. Section 2 of the Act dissolved the Board and provided "[a]ll powers and duties of said Board shall become powers and duties of the City of Concord." 1985 N.C. Sess. Laws. ch. 861, § 2. But Section 6 of the Act repealed the provisions of the 1977 Charter affording those powers to the Board in the first instance. *Id.* at § 6. So, the 1986 Act ostensibly both eliminates *and* transfers the powers of the Board afforded by the 1977 Charter.

Plaintiffs resolve this ambiguity by arguing that the 1986 Act eliminated the specific powers designated to the Board in the 1977 Charter and merely transferred any remaining powers, *i.e.*, those powers contained in the General Enterprise Statutes applicable to all municipalities, to the City upon the Board's dissolution. Plaintiffs note that, as held by our Supreme Court in *Quality Built Homes*, those General Enterprise Statutes did not authorize the City to levy prospective water and sewer fees.

The City argues that the 1986 Act is not ambiguous, pointing out the language of Section 4 of the Act, which provides that the General Assembly "intended to

continue without interruption those provisions of prior acts which are consolidated into this act, so that all rights and liabilities that have accrued are preserved and may be enforced." *Id.* at § 4. The City contends that, by this statement, the General Assembly made clear its intent to transfer the power to levy prospective fees from the Board to the City, even as it repealed the statute vesting those powers in the Board.

But Section 4, considered in context with other provisions of the Act, does not resolve the ambiguity identified by Plaintiffs. Section 4 provides that the Act was intended "to revise the Charter of the City of Concord and to consolidate herein certain acts" so that "those provisions of prior acts *which are consolidated into this act*" would continue. *Id.* (emphasis added). Section 6 repeals the portions of the 1977 Charter granting the Board the power to levy prospective fees. Section 1 recites the newly consolidated charter for the City and contains no mention of the Board's powers. *Id.* at §§ 1, 6. Its powers are not referenced in the new Charter. *Id.* at § 1. Given the repeal of the enabling provisions in the 1977 Charter, *id.* at § 2, it is unclear whether the Board's powers were actually incorporated into the new charter or the Act itself.

Plaintiffs' interpretation does not deprive Sections 4 or 2 of the meanings argued by the City. Plaintiffs construe Section 4 to continue those powers found in previous statutes and charters that were consolidated into and contained within the 1986 Act—but the power to levy prospective water and sewer fees is simply not one

of those continued powers. Plaintiffs construe Section 2, in turn, merely to clarify that the Board was eliminated, and that the general power to operate the water and sewer system reverted to the City.

We are left, then, with two reasonable competing interpretations of the 1986 Act: either (1) the General Assembly intended to eliminate the Board's powers in Section 6 and convey any powers under the General Enterprise Statutes that would have remained with the Board to the City under Section 2; or (2) it merely intended to eliminate the Board, preserve and transfer its powers under the 1977 Charter to the City, and sweep away the 1977 Charter by repeal as a matter of legislative housekeeping. Resort to the canons of statutory construction is necessary to resolve this ambiguity. *Abernethy*, 169 N.C. at 636, 86 S.E. at 580.

Plaintiffs argue, and we agree, that the canon of constitutional avoidance compels us to adopt their interpretation. Under that canon, "[w]hen reasonably possible, a statute . . . should be construed so as to avoid serious doubt as to its constitutionality." *Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 291 N.C. 55, 70, 229 S.E.2d 268, 276 (1976). The canon applies in equal measure to the United States and North Carolina Constitutions. *See, e.g., N.C. State Bd. Of Educ. v. State*, 371 N.C. 170, 180, 814 S.E.2d 54, 62 (2018) (acknowledging the canon in resolving a potential conflict between a state statute and the North Carolina Constitution). Reliance on the canon does not involve a determination of constitutionality. *See, e.g.,*

*Delconte v. State*, 313 N.C. 384, 402, 329 S.E.2d 636, 647 (1985) ("We do not, of course,

purport to decide this constitutional issue. We rely, instead, on the familiar canon of

statutory construction that '[w]here one of two reasonable constructions will raise a

serious constitutional question, the construction which avoids the question should be

adopted.' " (quoting *In re Arthur*, 291 N.C. 640, 642, 231 S.E.2d 614, 616 (1977)

(alteration in original) (additional citations omitted))). This canon does not limit

avoidance to interpretations that render a statute conclusively unconstitutional:

> The cardinal principle of statutory construction is to save
> and not to destroy. We have repeatedly held that as
> between two possible interpretations of a statute, by one of
> which it would be unconstitutional and by the other valid,
> our plain duty is to adopt that which will save the act. *Even
> to avoid a serious doubt the rule is the same.*

*In re Dairy Farms*, 289 N.C. 456, 465, 223 S.E.2d 323, 328-29 (1976) (citation and

internal quotation marks omitted) (emphasis added). And, contrary to the arguments

raised by the City in its cross-appeal, the canon is not an affirmative cause of action

directly challenging the constitutionality of a statute:

> This accusation misconceives—and fundamentally so—the
> role played by the canon of constitutional avoidance in
> statutory interpretation. The canon is not a method of
> adjudicating constitutional questions by other means.
> Indeed, one of the canon's chief justifications is that it
> allows courts to *avoid* the decision of constitutional
> questions. It is a tool for choosing between competing
> plausible interpretations of a statutory text, resting on the
> reasonable presumption that Congress did not intend the
> alternative which raises serious constitutional doubts. The
> canon is thus a means of giving effect to congressional

> intent, not of subverting it. And when a litigant invokes
> the canon of avoidance, he is not attempting to vindicate
> the constitutional rights of others . . . ; he seeks to vindicate
> his own *statutory* rights. We find little to recommend [this]
> novel interpretive approach . . . , which would render every
> statute a chameleon, its meaning subject to change
> depending on the presence or absence of constitutional
> concerns in each individual case.

*Clark v. Martinez*, 543 U.S. 371, 381-82, 160 L. Ed. 2d 734, 747 (2005) (citations omitted) (emphasis in original).

The City's interpretation in this case raises a serious constitutional question: whether the 1986 Act, in transferring the Board's power to levy prospective water and sewer fees in the 1977 Charter—which were absent from the General Enterprise Statutes in effect at the time—to the City constitutes a local act affecting health and sanitation as prohibited by Article II, Subsection 24(1)(a) of the North Carolina Constitution. *See City of Asheville*, 369 N.C. at 105-06, 794 S.E.2d at 776 (holding that a local act transferring control over Asheville's water system from the city to Buncombe County was an unconstitutional local act in violation of Article II, Subsection 24(1)(a)). Resolving that question involves the predicate constitutional issue of whether the 1986 Act represents an exercise of the General Assembly's plenary authority to establish the boundaries and organization of municipalities, which would not be subject to the prohibition found in Article II. *See Town of Boone*, 396 N.C. at 136, 794 S.E.2d at 718 (holding that an exercise of that plenary authority under Article VII, Section 1 is not restricted by the prohibitions against certain local

acts in Article II, Section 24). As revealed by the thorough briefs from Plaintiffs and the City, these constitutional questions are not easily resolved,[4] and serious doubts as to constitutionality of the 1986 Act, as interpreted by the City, redound as a result.[5]

For example, in arguing that the 1986 Act was an exercise of the General Assembly's plenary powers under Article VII, Section 1, the City points out that the 1986 Act "is a complete revision of the Charter for the City and is concerned with all facets of the governance of the City[,]" while Plaintiffs rightly note that the 1986 Act appears principally concerned with shifting control of the City's water system, as "a close comparison of the [1986 Act and the 1977 Charter it replaced] reveals that

---

[4] Though *Town of Boone* and *City of Asheville* were filed on the same date, each one garnered different majorities and dissents with conflicting interpretations of both decisions. *Compare Town of Boone*, 369 N.C. at 164-65, 794 S.E.2d. at 737 (Ervin, J., concurring) (disagreeing with the majority's holding that a local act was not subject to analysis under Article II, Section 24 and instead applying the test developed in *City of Asheville* to determine that the local act was constitutional), *and id.* at 173-74, 794 S.E.2d at 741-42 (Beasley, J., dissenting) (agreeing with the concurrence that the local act was subject to Article II, Section 24 analysis but disagreeing that it was constitutional under *City of Asheville*), *with City of Asheville*, 369 N.C. at 107-08, 794 S.E.2d at 779 (Newby, J., dissenting) (departing from the majority's holding that an act transferring Asheville's water system to Buncombe County was an unconstitutional local act and arguing instead that it was an exercise of plenary power under Article VII, Section 1 based in part on *Town of Boone*).

[5] We acknowledge that the Supreme Court in *Quality Built Homes* noted that "[m]unicipalities routinely seek and obtain enabling legislation from the General Assembly to assess impact fees." 369 N.C. at 21, 789 S.E.2d at 459. However, *Quality Built Homes* did not involve the constitutional question of whether those enabling local acts were unconstitutional under Article II, Section 24. Further, the quoted language appears to be a simple factual observation rather than the legal reasoning relied upon to resolve the case, and thus constitutes nonbinding *dicta. See, e.g., State v. Rankin*, ___ N.C. App. ___, ___, 809 S.E.2d 358, 363 ("Our Supreme Court has defined obiter dictum as '[l]anguage in an opinion not necessary to the decision.'" (quoting *Trs. of Rowan Tech. Coll. v. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985)), *aff'd*, 371 N.C. 885, 821 S.E.2d 787 (2018).

except for the repeal of the provisions relating to the Board . . . , there are hardly any other substantive changes that result." (emphasis omitted).[6]

Similarly, Plaintiffs point to our Supreme Court's holding in *City of Asheville* that a statute that "works a change in the governance of the City's water system . . . impermissibly relate[s] to health and sanitation in violation of Article II, Section 24(1)(a) of the North Carolina Constitution" for the proposition that the City's interpretation is potentially unconstitutional. 369 N.C. at 105, 794 S.E.2d at 777. The City, by contrast, relies on a decision by this Court in a different case—which was not expressly overruled by our Supreme Court in *City of Asheville*—holding that a local act modifying Asheville's ability to charge certain water service fees was not related to health or sanitation as prohibited by the Constitution. *City of Asheville v. State*, 192 N.C. App. 1, 36-37, 665 S.E.2d 103, 128 (2008).

Rather than compelling us to resolve the serious constitutional doubts present in this case, Plaintiffs' interpretation of the 1986 Act removes those doubts consistent with the canon of constitutional avoidance. Under that interpretation of the Act, the General Assembly did little more than provide the City with the fee-levying powers granted to all municipalities under the pertinent General Enterprise Statutes and

---

[6] Beyond eliminating the Board, the only substantive change found in the 1986 Act was the creation of the position of City Clerk, who was tasked with keeping minutes at Board of Aldermen meetings and acting as custodian of city records. 1985 N.C. Sess. Laws ch. 861, § 1. The 1986 Act did not otherwise substantively alter the City's charter, as it did not change the City's boundaries or modify the size or duties of any other offices except where accounting for the abolishment of the Board. *Compare* 1977 N.C. Sess. Laws 744, § 1, *with* 1985 N.C. Sess. Laws ch. 861, § 1.

eliminated the Board consistent with the plenary powers found in Article VII, Section 1. We therefore hold that the 1986 Act eliminated the Board, revoked the power to levy prospective fees provided to it under the 1977 Charter, and vested the City with the ability to levy water and sewer fees consistent with the General Enterprise Statutes.

## C.  *The City's Cross-Appeal*

In its cross-appeal, the City asserts that the Plaintiffs' reliance on the canon of constitutional avoidance is in reality a distinct cause of action to declare the 1986 Act unconstitutional, and that it must have been specifically pled consistent with the notice pleading standard found in the North Carolina Rules of Civil Procedure and precedents applying them.  As detailed above, however, application of the canon is not a veiled facial constitutional challenge and is, in actuality, merely a tool for divining legislative intent and statutory meaning.  *See Delconte*, 313 N.C. at 402, 329 S.E.2d at 647 ("We do not, of course, purport to decide this constitutional issue."); *Clark*, 543 U.S. at 381, 160 L. Ed. 2d at 747 ("This accusation misconceives—and fundamentally so—the role played by the canon of constitutional avoidance in statutory interpretation.  The canon is not a method of adjudicating constitutional questions by other means.  Indeed, one of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions." (citations omitted) (emphasis in original)).  We are not aware of any precedents—and the City provides

none—holding that a party arguing against a particular interpretation of a statute relied upon by a movant on summary judgment must have previously pled (or moved to amend a pleading to include) a canon of construction in order to raise it at the summary judgment hearing. We therefore hold the trial court did not err in considering the canon of constitutional avoidance in entering summary judgment.

### III. <u>CONCLUSION</u>

We hold that the trial court erred in entering summary judgment in favor of the City because the 1986 Act did not give the City the power to levy prospective water and sewer fees. We reverse the trial court's entry of summary judgment and remand this matter to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges BERGER and MURPHY concur.