BRYANT, Judge.
*410 Respondent, the mother of the minor child J.L. ("Jay"),[1] appeals from the trial court's permanency planning order awarding guardianship of the child to his foster parents ("Mr. and Ms. C"). We hold the trial court erred by failing to indicate that the findings of fact supporting the determination that respondent was unfit as a parent and had acted inconsistent with her constitutionally protected parental status were found to a clear and convincing evidence standard of proof and by failing to notify respondent of her right to file a motion for review of the visitation plan, as required by General Statutes, section 7B-905.1(d). We vacate those portions of the trial court's 12 February 2018 permanency planning order and remand for further proceedings consistent with this opinion. The order is otherwise affirmed.
Two days after Jay's birth in October 2016, the Johnston County Department of Social Services ("DSS") filed a juvenile petition alleging Jay was a neglected and dependent juvenile. The petition alleged that: (1) DSS received a Child Protective Services ("CPS") report that respondent had a history with CPS in Wake County and Johnston County; (2) three other children had been removed from respondent's care; (3) respondent had been unable to acquire adequate housing, complete parenting classes, attend budgeting classes, or remain compliant with recommended mental health treatment, and as a result, the permanent plan for those children had been changed to adoption; (4) respondent subsequently relinquished her parental rights to those children;[2] (5) respondent's current roommate had a history with CPS and did not have custody of any of her own children; and (6) respondent displayed concerning behaviors at the hospital, including failing to feed Jay in a timely manner, an "overall lack of knowledge in basic infant care" during *411 feedings and diaper changes, and an inability to control the amount of force exerted when moving Jay's limbs. The same day, DSS obtained nonsecure custody of Jay and placed him in foster care with Mr. and Ms. C.
A hearing on the petition was held on 7 December 2016. Respondent stipulated to the factual basis of the petition and consented to an adjudication of neglect and dependency. The trial court entered an order on 2 February *262 2017 adjudicating Jay to be a neglected and dependent juvenile. The same day, the trial court entered a separate dispositional order continuing custody of Jay with DSS. Jay remained placed in foster care with Mr. and Ms. C, and respondent was allowed one-hour of supervised visitation twice a month. The trial court ordered respondent to cooperate with DSS and follow any and all DSS recommendations, which included the following: complete parenting classes and demonstrate learned knowledge; complete a mental health assessment and follow all recommendations; take all medications as prescribed; submit to drug screens as requested by DSS; obtain and maintain safe, stable housing that is clean, appropriately furnished, and free from substance abuse and domestic violence; obtain and maintain sufficient financial resources to meet Jay's needs; educate herself regarding budgeting and demonstrate learned knowledge; and conduct herself in an appropriate manner during visitations.
After a permanency planning hearing on 22 March 2017, the trial court entered an order ceasing reunification efforts with respondent and establishing a primary permanent plan of custody or guardianship with a court-approved caretaker, with a secondary plan of adoption. Jay remained in DSS custody and in his foster care placement with Mr. and Ms. C. Respondent's visitation was reduced to a monthly, one-hour supervised visit.
A subsequent permanency planning hearing was held on 2 and 9 August 2017. At the beginning of the hearing, DSS informed the trial court it had located the foster parents who had adopted two of Jay's older half-siblings ("Mr. A and Ms. F"), and it recommended that Jay be moved to that foster home. Jay's guardian ad litem ("GAL") and respondent agreed with DSS's recommendation. At that time, counsel for Jay's current foster parents, Mr. and Ms. C, indicated they intended to file a motion to intervene in the matter. The trial court stated Mr. and Ms. C could not be made parties to the case, but it would permit their counsel to facilitate their testimony on direct examination since it was required to hear information from any person providing care for the juvenile. See N.C. Gen. Stat. § 7B-906.1(c) (2017). During the hearing, *412 the trial court heard testimony from the following witnesses: (1) Jay's social worker; (2) Jay's GAL; (3) Jay's foster parents, Mr. and Ms. C; (4) the GAL for Jay's two older half-siblings who were adopted by Mr. A and Ms. F; and (5) Ms. F. After receiving all of the evidence, the trial court orally rendered its decision to grant guardianship of Jay to Mr. and Ms. C and entered a temporary order to that effect on 9 August 2017. The temporary order stated that a final order would be prepared and entered within thirty days.
On 1 September 2017, before the final order from the hearing was entered, respondent filed a motion to re-open the evidence for the purpose of presenting expert testimony. The trial court granted the motion, and a hearing on the motion was held on 8 November 2017. At the hearing, the trial court heard testimony from two psychologists regarding the impact on Jay of being removed from the foster home of Mr. and Ms. C and being placed in the foster home of Mr. A and Ms. F with two of his half-siblings. Dr. Stephanie Best was called by counsel for respondent. Dr. Ginger Calloway, who was procured to testify by Mr. and Ms. C, was called by Jay's GAL attorney advocate and directly examined by counsel for Mr. and Ms. C. On 12 February 2018, the trial court entered a subsequent permanency planning order again awarding guardianship of Jay to Mr. and Ms. C. The trial court further ordered that respondent was to have no face-to-face visitation with Jay, but she could have telephonic communication with him as monitored by Mr. and Ms. C. Respondent timely appealed.
_________________________
Standing
As a preliminary matter, we note that Mr. and Mrs. C's brief submitted to this Court is entitled "Guardians-Appellees' Motion to Dismiss and Brief" and contains a section requesting that respondent's appeal be dismissed due to lack of standing.
It is well established that "[m]otions to an appellate court may not be made in a brief but must be made in accordance *263 with N.C.R. App. P. 37." Horton v. New South Ins. Co., 122 N.C. App. 265, 268, 468 S.E.2d 856, 858 (1996) (citation omitted); see also Smithers v. Tru-Pak Moving Sys., 121 N.C. App. 542, 545, 468 S.E.2d 410, 412 (1996) ("[The] [d]efendant's motion to dismiss plaintiff's appeal is not properly before us. A motion to dismiss an appeal must be filed in accord with Appellate Rule 37, not raised for the first time in the brief as defendant has done here." (citation omitted)). Because Mr. and Ms. C have not filed a motion to *413 dismiss respondent's appeal in accordance with Rule 37, the motion to dismiss contained in their brief is not properly before this Court.
We are, however, compelled to address whether respondent has standing to appeal. "Standing is jurisdictional in nature and [c]onsequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved." In re T.M. , 182 N.C. App. 566, 570, 643 S.E.2d 471, 474 (2007) (alterations in original) (citation omitted). "As the party invoking jurisdiction," respondent has the burden of proving that she has standing to file an appeal. In re T.B. , 200 N.C. App. 739, 742, 685 S.E.2d 529, 532 (2009) (citation omitted).
The Juvenile Code provides that an appeal may be taken to this Court from "[a]ny order, other than a nonsecure custody order, that changes the legal custody of a juvenile." N.C. Gen. Stat. § 7B-1001(a)(4) (2017). Under General Statutes, section 7B-1002(4), "[a] parent ... who is a nonprevailing party" may bring an appeal. Id. § 7B-1002(4) (2017).
In this case, both statutory requirements are satisfied. First, the trial court's 12 February 2018 permanency planning order awarding guardianship of Jay to Mr. and Ms. C changed legal custody of Jay from DSS to Mr. and Ms. C. See id. § 7B-600(a) (2017) (providing, in relevant part, that "[t]he guardian shall have the care, custody, and control of the juvenile"). Second, respondent is Jay's parent who was a "nonprevailing party" below. "A prevailing party is defined as one in whose favor the decision or verdict is rendered and judgment entered[.]" T.B. , 200 N.C. App. at 746, 685 S.E.2d at 534 (alteration in original) (quoting House v. Hillhaven, Inc. , 105 N.C. App. 191, 195, 412 S.E.2d 893, 896 (1992) ). At the subsequent permanency planning hearing, respondent's counsel argued that Jay should be placed in the foster home of Mr. A and Ms. F, and she objected to Mr. and Ms. C being granted guardianship of Jay. Contrary to respondent's request, the trial court awarded guardianship of Jay to Mr. and Ms. C, thereby declining to place him with Mr. A and Ms. F. Because the trial court failed to grant respondent's request, she has demonstrated that she was a nonprevailing party. Cf. id. at 746, 685 S.E.2d at 534 (concluding the maternal grandmother was not a nonprevailing party when the trial court granted her requests that the paternal grandmother and her husband not be awarded permanent physical custody and that she be granted visitation privileges).
In support of their argument that respondent lacks standing to challenge the trial court's permanency planning order appointing them as Jay's guardians, Mr. and Ms. C cite to this Court's opinion *414 In re C.A.D. , 247 N.C. App. 552, 786 S.E.2d 745 (2016). In C.A.D. , the respondent-mother argued that the trial court erred by ceasing reunification efforts in a permanency planning order because her children should have been placed with their maternal grandparents. Id. at 563, 786 S.E.2d at 751. The maternal grandparents were the former custodians of at least one of the juveniles involved in the case and could have appealed from the order at issue, but they did not. Id. at 556, 786 S.E.2d at 747. This Court held that the respondent-mother lacked standing to raise the argument because she was not aggrieved by the trial court's decision, stating:
[T]he maternal grandparents have not appealed the trial court's permanency plan. They do not complain of the court's findings of fact or conclusions of law, and they do not complain they were injuriously affected by the trial court's decision to pursue adoption. [The] [r]espondent cannot claim an injury on their behalf. Therefore, she has no standing to raise ... [this] claim.
Id. at 563, 786 S.E.2d at 752.
The instant case is distinguishable from C.A.D. Here, Mr. A and Ms. F were not *264 parties to the case and could not have independently appealed from the trial court's 12 February 2018 order. See N.C. Gen. Stat. § 7B-1002 (enumerating the proper parties to take an appeal). Respondent is not attempting to present a claim on behalf of Mr. A and Ms. F, but instead asserts her own parental interest in having Jay placed in a foster home with two of his half-siblings. See In re D.S. , --- N.C. App. ----, ----, 817 S.E.2d 901, 904-05 (2018) (holding respondent-father had standing to contend on appeal that the trial court erred in failing to consider placement with the paternal grandmother before granting guardianship to a non-relative where paternal grandmother was never a party to the juvenile case). Accordingly, we conclude that respondent has standing to bring this appeal.
_________________________
On appeal, respondent argues that (I) the trial court erred in permitting Mr. and Ms. C to contest DSS's placement recommendation and present evidence as if they were a party to the case; (II) the expert testimony relied upon by the trial court was insufficient, unreliable, and too speculative to support its findings; (III) the trial court erred in failing to indicate that it applied the correct standard of proof in finding respondent was unfit and had acted inconsistently with her constitutionally *415 protected status as a parent; and (IV) the trial court erred in failing to establish an appropriate visitation schedule for respondent. We address each argument in turn.
I
First, respondent argues the trial court erred by allowing foster parents Mr. and Ms. C and their counsel to participate in the proceedings in the manner that it did, contending the court essentially conferred party status on them in violation of General Statutes, sections 7B-401.1(e1) and (h). We disagree.
Except in limited circumstances, a foster parent for a juvenile is not a party to the case and may not be allowed to intervene. See N.C. Gen. Stat. § 7B-401.1(e1), (h) (2017). However,
[a]t each hearing, the court shall consider information from the parents, the juvenile, the guardian, any person providing care for the juvenile , the custodian or agency with custody, the guardian ad litem, and any other person or agency that will aid in the court's review . The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition.
N.C. Gen. Stat. § 7B-906.1(c) (emphases added).
It is well settled that "[t]he trial judge has inherent authority to supervise and control trial proceedings. The manner of the presentation of the evidence is largely within the sound discretion of the trial judge and his control of a case will not be disturbed absent a manifest abuse of discretion." State v. Davis, 317 N.C. 315, 318, 345 S.E.2d 176, 178 (1986). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." Briley v. Farabow, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998) (citations omitted).
Respondent has failed to show an abuse of discretion by the trial court under the specific circumstances of this case. The trial court did not allow Mr. and Ms. C to intervene as parties. Rather, the trial court permitted counsel for Mr. and Ms. C to facilitate their testimony on direct examination, which was information the court was required to hear under section 7B-906.1(c). Mr. and Ms. C's counsel was not afforded the *416 opportunity to present other witnesses, introduce exhibits, cross-examine witnesses, lodge objections, or present closing argument as a party to the proceeding would have been allowed to do. In addition, the GAL attorney advocate specifically requested that Mr. and Ms. C's counsel conduct the direct examination of Dr. Calloway. The trial court apparently determined that information from Dr. Calloway would "aid in the court's review" as evidenced by the fact that it re-opened the evidence for the *265 sole purpose of hearing expert testimony on the impact on Jay of being removed from the foster home of Mr. and Ms. C and being placed in the foster home of Mr. A and Ms. F with two of his half-siblings. Mr. and Ms. C's counsel's involvement was limited to asking Dr. Calloway questions on direct and redirect examination. Again, unlike a party, counsel was not permitted to call other witnesses, cross-examine the opposing expert witness, lodge objections, or present closing argument. Because the trial court was statutorily required to hear testimony from the foster parents and any person who would aid in the court's review, see N.C.G.S. § 7B-906.1(c), its decision to permit Mr. and Ms. C and their counsel to participate in the proceedings as it did was not "manifestly unsupported by reason[,]" Briley , 348 N.C. at 547, 501 S.E.2d at 656. This holding is limited to the specific facts of this case. Accordingly, respondent's argument is overruled.
II
Respondent challenges the evidentiary support for the findings of fact in the 12 February 2018 order insofar as the trial court relied upon Dr. Calloway's testimony. Respondent contends Dr. Calloway's testimony should be discounted because she had not personally evaluated Jay and did not know for certain how Jay would respond to a move to Mr. A and Ms. F's home. We disagree.
"[Appellate] review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." In re P.O. , 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010) (citation omitted). "The trial court's findings of fact are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." In re J.H. , 244 N.C. App. 255, 268, 780 S.E.2d 228, 238 (2015) (citation omitted).
Respondent asserts that Dr. Calloway's testimony was insufficient, unreliable, and too speculative to support the following findings of fact:
*417 6. ...
....
c. ... The members of the [Mr. and Ms. C] family are those with whom [Jay] identifies by sight, sound and smell, and has done so for his entire life (thirteen (13) months as of 11-8-2017).
....
e. ... Having had the opportunity to observe the appearance, attitude, tone and demeanor of both tendered experts, the court accredits the testimony of Dr. Ginger Calloway that in being removed from the only home the thirteen (13) month old juvenile has ever known, the juvenile would suffer disruption and some level of mental, emotional, and psychological trauma. Furthermore, given his specific age, he would not have the benefit of being able to process why he was being moved nor would he be able to articulate his level of mental, emotional and psychological discomfort.
Citing to two cases involving workers' compensation claims, respondent insists that Dr. Calloway's testimony was speculative and "insufficient to establish a connection for causal findings by the court."
In accordance with the Juvenile Code, at a permanency planning hearing, "[t]he court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, or testimony or evidence from any person that is not a party, that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C.G.S. § 7B-906.1(c).
Dr. Calloway, who reviewed the reports prepared by DSS and GAL for the August 2017 permanency planning hearing and listened to the audio recording of that hearing, testified that Jay had seen, smelled, and been cared for by Mr. and Ms. C's family for over a year. She agreed that a nine-to-ten month old child could be expected to have formed an attachment relationship with the people he lived with, stating that such a relationship begins when the child starts being around people. When asked about the consequences of moving Jay to another home in light of his young age, Dr. Calloway specifically opined:
*266 For any child who has, or any baby who has formed attachments to specific people, loss of those attachments is like *418 death because this child has relationships already with the family that he knows, which is the family that he lives with, and that's his reality. So you take that child away from that reality, you're -- he will suffer. ... In working with children, and clinically when I have provided clinical services to children, I think the children that were maybe the most touching and moving in some ways are the children for whom language did not exist when the trauma happened because the experience of loss and trauma is every bit as real pre-verbally as it is verbally, but you don't have the cognitive or verbal skills to be able to make sense of it, you don't have the verbal skills to be able to talk about it, but it is real nonetheless.
She further opined that removing Jay from Mr. and Ms. C "will cause loss and trauma." When asked about the long-term consequences of such loss and trauma, Dr. Calloway testified:
What the literature suggests is that when children experience traumas and losses, and when they become removed from the caregivers that they know as infants, that there can be consequences to their learning in school, to their self-confidence, to their ability to regulate their emotions, to even -- there are some studies that even show antisocial behaviors are characteristics of some children. So there can be a range of negative consequences, and all of that, of course, is dependent on what happens to the child afterwards, meaning after the loss or the trauma.
We conclude that Dr. Calloway's testimony was sufficient competent evidence to support the trial court's findings of fact. Accordingly, we find no error in the challenged findings.
III
Respondent next argues the trial court erred by failing to indicate it applied the correct standard of proof in determining that respondent was unfit and had acted inconsistent with her constitutionally protected status as a parent. We agree.
"[N]atural parents have a constitutionally protected interest in the companionship, custody, care, and control of their children." Bennett v. Hawks , 170 N.C. App. 426, 428, 613 S.E.2d 40, 42 (2005) (alteration in original) (quoting *419 Price v. Howard, 346 N.C. 68, 72, 484 S.E.2d 528, 530 (1997) ). "[A] natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status." David N. v. Jason N., 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005). Therefore, "[t]he trial court must clearly 'address whether respondent is unfit as a parent or if her conduct has been inconsistent with her constitutionally protected status as a parent, should the trial court ... consider granting custody or guardianship to a nonparent.' " In re K.L. , --- N.C. App. ----, ----, 802 S.E.2d 588, 597 (2017) (quoting In re P.A. , 241 N.C. App. 53, 66-67, 772 S.E.2d 240, 249 (2015) ).
Because the decision to remove a child from a natural parent's custody "must not be lightly undertaken[,] ... [the] determination that a parent's conduct is inconsistent with ... her constitutionally protected status must be supported by clear and convincing evidence." [ Adams v. Tessener , 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) ]. ... "Clear and convincing" evidence is an intermediate standard of proof, greater than the preponderance of the evidence standard applied in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in most criminal cases." In re Montgomery , 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984).
In re E.M. , --- N.C. App. ----, ----, 790 S.E.2d 863, 874 (2016) (alterations in original). "While this analysis is often applied in civil custody cases under Chapter 50 of the North Carolina General Statutes, it also applies to custody awards arising out of juvenile petitions filed under Chapter 7B." In re D.M. , 211 N.C. App. 382, 385, 712 S.E.2d 355, 357 (2011) (citation omitted).
Here, the trial court found that respondent was unfit to have custody of Jay, *267 and that she had acted "against her constitutionally protected interest" as a parent. The trial court's order, however, fails to indicate that it applied the clear and convincing evidence standard in making these determinations. In addition, careful review of the transcript reveals that the trial court did not state the appropriate standard in open court on the record. "Absent an indication that the trial court applied the clear and convincing standard in this case, we reverse the order of the trial court and remand this case for findings of fact consistent therewith." Bennett , 170 N.C. App. at 429, 613 S.E.2d at 42 ; see also David N. , 359 N.C. at 307, 608 S.E.2d at 754 (reversing and remanding for finding consistent *420 with the clear and convincing standard, where the trial court "failed to apply the clear and convincing evidence standard as set forth in Adams in making th[e] determination" that the defendant's conduct was inconsistent with a natural parent's constitutionally protected interest).
IV
Lastly, respondent argues the trial court erred in failing to establish an appropriate visitation schedule for her. Her contentions are three-fold: (1) the trial court's order contains inconsistent provisions regarding visitation; (2) the trial court's findings were insufficient to support a denial of visitation; and (3) the trial court failed to inform her of her right to file a motion to review the visitation plan, in violation of N.C. Gen. Stat. § 7B-905.1(d) (2017). We conclude the trial court's findings concerning visitation were not inconsistent and were sufficient to support a denial of visitation. However, we agree that the trial court failed to comply with N.C. Gen. Stat. § 7B-905.1(d).
A. Provisions Regarding Visitation
Respondent contends that the trial court's 12 February 2018 order contains inconsistent provisions regarding visitation. We disagree.
In its 12 February 2018 its order, the trial court determined that "[t]he following rights and responsibilities remain with [respondent]: all rights of inheritance, financial responsibility and visitation." However, pursuant to General Statutes, section 7B-905.1(a), when considering what visitation schedule would be in Jay's best interest consistent with his health and safety, the court ordered that respondent was to have no visitation with Jay.[3] See N.C. Gen. Stat. § 7B-905.1(a) (2017).
We do not believe these provisions are inconsistent. Although labeled as a finding of fact, the trial court's determination that the right of visitation remained with respondent is a conclusion of law. See In re Helms , 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) ("As a general rule, ... any determination requiring the exercise of judgment or the *421 application of legal principles is more properly classified as a conclusion of law." (citations omitted)). This conclusion follows the trial court's determination that Mr. and Ms. C should be appointed Jay's guardians, and it conveys the parental status that respondent retained following that determination. The trial court's conclusion that respondent was a parent whose status conveyed a right to visitation was subject to the trial court's determination of the scope and duration of visitation "as may be in the best interest[ ] of the juvenile consistent with the juvenile's health and safety." N.C.G.S. 7B-905.1(a). We hold the trial court's visitation provisions on this point are not inconsistent; therefore, respondent's argument is overruled.
B. Denial of Visitation
Respondent contends the trial court's findings in its 12 February 2018 order *268 were insufficient to support a denial of visitation. We disagree.
An order which continues placement outside of a parent's home "shall provide for appropriate visitation as may be in the best interest[ ] of the juvenile consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905.1(a). Conversely, the court may prohibit visitation or contact by a parent when it is in the juvenile's best interest consistent with the juvenile's health and safety. See id. ; see also In re J.S., 182 N.C. App. 79, 86-87, 641 S.E.2d 395, 399 (2007) (affirming the order of the trial court that there be no contact between the respondent-father and J.S. where the evidence indicated that the respondent-father physically abused the juvenile daily). This Court reviews an order disallowing visitation for abuse of discretion. In re C.M., 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007).
[I]n the absence of findings that the parent has forfeited [his or her] right to visitation or that it is in the child's best interest to deny visitation[,] the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place[,] and conditions under which such visitation rights may be exercised. As a result, even if the trial court determines that visitation would be inappropriate in a particular case or that a parent has forfeited his or her right to visitation, it must still address that issue in its dispositional order and either adopt a visitation plan or specifically determine that such a plan would be inappropriate in light of the specific facts under consideration.
*422 In re K.C., 199 N.C. App. 557, 562, 681 S.E.2d 559, 563 (2009) (alterations in original) (citation omitted).
Here, the trial court made the ultimate finding that visitation would be inappropriate and not in Jay's best interest consistent with his health and safety. This ultimate finding is supported by the trial court's evidentiary findings, which include the following: (1) respondent had a long history with CPS that resulted in the removal of her three older children; (2) the "protective issues" identified with respect to Jay were similar to the issues which resulted in the removal of the older children; (3) DSS developed a case plan with respondent to address issues related to substance abuse, domestic violence, mental health, parenting, and stable housing and employment, but respondent was "only minimally participating in services to resolve the protective issues and is not able to demonstrate knowledge gained"; (4) respondent had not utilized any visitation since 23 February 2017; and (5) respondent had signed a relinquishment of her parental rights to Jay. Based on these findings, the trial court did not abuse its discretion in concluding visitation with respondent was not in Jay's best interest consistent with his health and safety. Therefore, respondent's argument is overruled.
C. Notice of Right to Review Pursuant to N.C. Gen. Stat. § 7B-905.1(d)
Respondent argues that the trial court committed reversible error by failing to inform her of her right to file a motion to review the visitation plan, in violation of General Statutes, section § 7B-905.1(d).
Section 7B-905.1(d) states that "[i]f the court retains jurisdiction, all parties shall be informed of the right to file a motion for review of any visitation plan entered pursuant to this section." N.C. Gen. Stat. § 7B-905.1(d) (2017) (emphasis added). Here, the trial court did not waive future review hearings and retained jurisdiction over Jay's case. However, in its order, the trial court did not notify respondent of her right to file a motion for review of the visitation plan. In addition, careful review of the transcript reveals that the trial court did not inform respondent of this right in open court on the record. Accordingly, we vacate the trial court's visitation order and remand for an order compliant with N.C. Gen. Stat. § 7B-905.1(d). See In re J.S. , No. COA16-1039, 2017 WL 2119415, at *8 (N.C. Ct. App. May 16, 2017) (unpublished) (vacating the trial court's visitation order for failure to inform parties of the right to file a motion for review and remanding for entry of an order compliant with N.C. Gen. Stat. § 7B-905.1(d) ).
*269 *423 Conclusion
We hold the trial court erred in (1) failing to state it applied the correct standard of proof in determining respondent was unfit as a parent and had acted inconsistent with her constitutionally protected status as a parent; and (2) failing to notify respondent of her right to file a motion for review of the visitation plan, as required by General Statutes, section 7B-905.1(d). We vacate those portions of the 12 February 2018 subsequent permanency planning order and remand for further proceedings consistent with this opinion. The order is otherwise affirmed.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.
Judge ARROWOOD concurs.
Judge DIETZ concurs with separate opinion.

Pseudonyms are used throughout this opinion to protect the juvenile's identity and for ease of reading.

DSS court reports indicate that respondent relinquished her parental rights to two of her children through proceedings in Wake County, but her oldest child was adopted in Alabama following termination of her parental rights.

Specifically, the trial court ordered that respondent was to have no face-to-face visitation with Jay, but that she could have telephonic communication with him as monitored by Mr. and Ms. C. This Court has previously held that electronic communication may supplement visitation, but it is not a replacement or substitute for in-person contact. In re T.R.T. , 225 N.C. App. 567, 573-74, 737 S.E.2d 823, 828 (2013) (concluding that videoconferencing was not visitation). As a result, an order that provides only for electronic communication effectively denies a respondent-parent visitation. See id. at 574, 737 S.E.2d at 829. Therefore, in this case, the trial court effectively denied respondent visitation when it prohibited face-to-face visitation but instead allowed respondent to communicate with Jay via telephone as monitored by Mr. and Ms. C.