IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-267-2

Filed 18 July 2023

Guilford County, Nos. 19 JA 404–06

IN THE MATTER OF: A.J.L.H., C.A.L.W., M.J.L.H.

Appeal by respondents from order entered 13 December 2019 by Judge Tonia A. Cutchin in Guilford County District Court. This case was originally heard in the Court of Appeals 17 November 2020. *See In re A.J.L.H.*, 275 N.C. App. 11, 853 S.E.2d 459 (2020). Upon remand from the Supreme Court of North Carolina.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Social Services.*

*Leslie C. Rawls, for the mother-appellant.*

*Benjamin J. Kull for respondent-father appellant.*

*Tin, Fulton, Walker & Owen, PLLC, by Cheyenne N. Chambers, for guardian ad litem.*

TYSON, Judge.

This case was returned to this Court on remand from the Supreme Court of North Carolina to address Respondents' remaining arguments concerning the disposition order. *In re A.J.L.H.*, 384 N.C. 45, 47, 884 S.E.2d 687, 695-96 (2023), (hereinafter "*A.J.L.H. II*"), reversing and remanding *In re A.J.L.H.*, 275 N.C. App. 11, 853 S.E.2d 459 (2020) (hereinafter "*A.J.L.H. I*"). We reverse the orders of the trial court regarding visitation and remand for further findings of facts and conclusions of

law.

## I.   Background

This matter involves the adjudication of Margaret as an abused and neglected juvenile, and the adjudication of Margaret's two younger siblings, Chris and Anna, as neglected juveniles.  *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identities of the juveniles).  The facts and procedural history are set forth in the Supreme Court's opinion:

> Respondent-mother is the mother of Margaret, Chris, and Anna. Respondent-father lives with respondent-mother and the children but is the biological father only of the youngest child, Anna. The fathers of Margaret and Chris are not parties to this appeal.
>
> In May 2019, the Guilford County Department of Health and Human Services [("DHHS")] received a report of inappropriate discipline of Margaret.  According to the report, Margaret "became extremely upset" following an incident at school and told school personnel that "she would be getting a whipping from her step-father just like she had done the previous day."  The report noted that there were three marks on Margaret's back "where the skin was broken and appeared to be from a belt mark" as well as red marks on Margaret's arms. The report further indicated that respondent-mother arrived at the school and stated that Margaret "was going to be punished again when she went home" and that Margaret "was afraid to go home."
>
> The next day, DHHS received a second report that Margaret had a new injury on the upper part of her back or neck "that appeared to be like a silver dollar."  Margaret explained that she "was hit" but would not give any details. Margaret was shaking and hiding under a desk, and she explained that she did not want to go home because "they" were "going to hurt me."

In response to this report, a social worker, Lisa Joyce, went to Margaret's school that day to speak with her. Joyce found Margaret under a desk in the school counselor's office. Margaret appeared nervous and told Joyce that she was afraid to go home. Margaret told Joyce that respondent-father hit her with a belt buckle, causing the marks on her back, and that respondents punished her by making her sleep on the floor without covers and stand in the corner for hours at a time. Joyce observed marks on Margaret's lower back and at the base of her neck, consistent with the two reports.

After speaking to Margaret, Joyce met with respondent-mother to discuss the allegations. Respondent-mother stated that Margaret "has been lying a lot lately" and that she knew about the marks on Margaret's back. She explained that the marks were "from the disciplinary action that she had asked respondent-father to perform" but that the marks were "accidental" due to Margaret moving around and causing respondent-father to hit her back instead of her buttocks area.

Respondent-mother also told Joyce "that she does take the bed privileges away for lying, that she does make Margaret stand in the corner from about 3:30 PM to around 6:00 PM," and that after stopping for dinner, "the child goes back to standing in the corner until it's bedtime." When asked about the frequency of punishment, respondent-mother stated "that recently it had been occurring about every day" due to Margaret's behavior. When Joyce expressed the view that the discipline seemed "extreme to be using on the child," respondent-mother responded that she did not feel like what she was doing was wrong and she "felt like that this was appropriate."

Joyce also spoke with respondent-father. He reported to Joyce that he had physically disciplined Margaret in the days leading up to the DHHS reports and that he did so to "discourage the child from lying." Respondent-father also confirmed that Margaret "is made

to stand in the corner for two to three hours at a time" and "made to sleep on the floor" as additional forms of discipline. When asked how often these disciplinary actions were happening, respondent-father stated that "it had been occurring a lot" in the past two months. Joyce asked whether respondent-father thought the practices were appropriate, and he responded that "he didn't see anything wrong with the disciplinary practices that they were using."

DHHS entered into a safety plan with respondents, under which Margaret was placed with her maternal grandmother. Chris and Anna remained in the home with respondents. Respondent-mother was charged with misdemeanor child abuse, and respondent-father was charged with assault on a child under the age of twelve in connection with their discipline of Margaret.

Between May and August 2019, DHHS social workers made home visits to check on Chris and Anna. They found no issues of concern. On 8 August 2019, DHHS held a meeting with respondents. The DHHS staff members explained their concerns about Margaret's discipline to respondents; however, respondents continued to defend their discipline of Margaret, with respondent-mother explaining that she was trying to "teach" Margaret that if Margaret continued misbehaving "she could end up in jail." Respondents did not commit to stop disciplining Margaret as they had in the past and did not acknowledge that these repeated, daily disciplinary measures—including whippings with a belt—were inappropriate for a nine-year-old child.

The following day, DHHS filed juvenile petitions alleging that Margaret was abused and neglected and that three-year-old Chris and three-month-old Anna were neglected. DHHS obtained custody of all three children.

After a hearing in which the trial court received evidence concerning the facts described above, the court entered an adjudication and disposition order on 13

> December 2019. In the order, the trial court adjudicated Margaret an abused and neglected juvenile and adjudicated Chris and Anna as neglected juveniles. In its disposition order, the court placed Margaret with a relative and Chris and Anna in foster care. The court determined that it was not in the children's best interests for respondents to have any visitation with the children while they worked on their case plans with DHHS. The court also scheduled a review hearing for several months after the date of the order.

*In re A.J.L.H. II*, 384 N.C. at 48-50, 884 S.E.2d at 690-91 (alternations in original omitted) (footnote omitted).

In the prior appeal, this Court vacated and remanded the order adjudicating Margaret as an abused and neglected juvenile. *In re A.J.L.H. I*, 275 N.C. App. at 21-23, 853 S.E.2d at 467-68. This Court explained the trial court's findings relied on inadmissible hearsay statements from Margaret, concluding it was "apparent the trial court's abuse adjudication [wa]s heavily reliant and intertwined with its findings based on inadmissible evidence." *Id.* at 23, 853 S.E.2d at 468. The matter was remanded to the trial court "for a new hearing at which the trial court should make findings on properly admitted clear and convincing evidence and make new conclusions of whether" Margaret is an abused or neglected juvenile. *Id.* If the trial court again found Margaret was an abused or neglected juvenile, this Court instructed the trial court to "order generous and increasing visitation between Margaret and her mother." *Id.* at 25, 853 S.E.2d at 469.

This Court further held the adjudications of Chris and Anna as neglected

juveniles should be reversed, because those adjudications were "based solely on its conclusion Margaret was purportedly abused and neglected." *Id.* at 24, 853 S.E.2d at 468.

DHHS timely filed a petition for discretionary review to our Supreme Court pursuant to N.C. Gen. Stat. § 7A-31 (2021), and the guardian *ad litem* joined the request for review.

The Supreme Court allowed the petition, *In re A.J.L.H. II,* 384 N.C. at 51, 884 S.E.2d at 692, and reversed this Court's decision regarding Margaret's out-of-court statements, concluding: (1) Margaret's testimony was best classified as an out-of-court statement offered for a purpose other than to prove the truth of the matter asserted and should not be considered hearsay; and, (2) this Court should have "simply disregard[ed] information contained in findings of fact that lack[ed] sufficient evidentiary support and examine[d] whether the remaining findings support[ed] the trial court's determination." *Id.* at 52, 884 S.E.2d at 692-93 (citation and internal quotation marks omitted).

Our Supreme Court also re-affirmed appellate review of a trial court's best interests assessment regarding a visitation decision made pursuant to N.C. Gen. Stat. § 7B-905.1 is for an abuse of discretion. *Id.* at 56-57, 884 S.E.2d at 695. "In the rare instances when a reviewing court finds an abuse of that discretion, the proper remedy is to vacate and remand for the trial court to exercise its discretion. The reviewing court should not substitute its own discretion for that of the trial court."

*Id.* at 48, 884 S.E.2d at 690.

## II.    Issues

We review whether the trial court abused its discretion when it failed to provide for any visitation between Respondents and their children with their parents.

## III.    Dispositional Order for Visitation

Respondents argue the trial court abused its discretion when: (1) it prohibited *any* visitation between Respondent parents and their three children; and, (2) it concluded DHHS had made reasonable efforts to avoid taking custody of the children. They also assert "it was not reasonable for DHHS to seek custody of these children because of the parents' refusal to agree with the blanket accusation DHHS leveled against them." They also argue the trial court abused its discretion and erred by failing to consider and make the required factors and determinations to support any finding it was in the children's best interests to deny visitation.

### A. Standard of Review

"The assessment of the juvenile's best interests concerning visitation is left to the sound discretion of the trial court and 'appellate courts review the trial court's assessment of a juvenile's best interests solely for an abuse of discretion.' " *A.J.L.H. II*, 384 N.C. at 57, 884 S.E.2d at 695 (quoting *In re K.N.L.P.*, 380 N.C. 756, 759, 869 S.E.2d 643, 646 (2022)).

"Under this standard, we defer to the trial court's decision unless it is manifestly unsupported by reason or one so arbitrary that it could not have been the

result of a reasoned decision." *In re K.N.L.P.*, 380 N.C. at 759, 869 S.E.2d at 646 (citation omitted).

"The standard of review that applies to an [assertion] of error challenging a dispositional finding is whether the finding is supported by competent evidence. A finding based upon competent evidence is binding on appeal, even if there is evidence which would support a finding to the contrary." *In re B.C.T.*, 265 N.C. App. 176, 185, 828 S.E.2d 50, 57 (2019) (citation and quotation marks omitted). Dispositional findings must be based upon properly admitted and clear cogent and convincing evidence. *Id.*

### B. Analysis

After initially concluding a parent is either unfit or has acted inconsistent with his or her parental rights, "even if the trial court determines that visitation would be inappropriate in a particular case . . . it must still address that issue in its dispositional order and either adopt a visitation plan or specifically determine that such a plan would be inappropriate in light of the specific facts under consideration." *In re J.L.* 264 N.C. App. 408, 421, 826 S.E.2d 258, 268 (2019) (citation omitted). A trial court may only "prohibit visitation or contact by a parent when it is in the juvenile's best interest consistent with the juvenile's health and safety." *Id.*

> [E]ven if the trial court determines . . . that a parent has forfeited his or her right to visitation, it must still address that issue in its dispositional order and either adopt a visitation plan or specifically determine that such a [visitation] plan [is] inappropriate in light of the specific

facts under consideration.

*In re K.C.*, 199 N.C. App. 557, 562, 681 S.E.2d 559, 563 (2009).

When denying *all* visitation, this Court has required the trial court to find factors such as: (1) whether the parent denied visitation has a "long history with CPS"; (2) whether the issues which led to the removal of the current child are related to previous issues which led to the removal of another child; (3) whether a parent minimally participated, or failed to participate, in their case plan; (4) whether the parent failed to consistently utilize current visitation; and, (5) whether the parent relinquished their parental rights. *See In re J.L.*, 264 N.C. App. at 422, 826 S.E.2d at 268 (analyzing a trial court's compliance with N.C. Gen. Stat. § 7B-905.1 regarding the visitation provisions awarded in a permanency planning order).

Here, the trial court was constitutionally and statutorily required to assess whether and to the extent visitation should be awarded to four different parents for each of their respective children. Respondent-mother's visitation with all three children, Respondent-Father's visitation with Anna, Chris's biological father's visitation, and Margaret's biological father's visitation. The order contains and recites the history and current compliance to case plans for all four individuals.

The trial court, however, failed to find and make conclusions of law addressing the factors applicable to visitation for *each child with each parent*. The trial court also failed to conduct an individualized evaluation of the factors affecting *each parents'* visitation rights with his, her, or their children. The transcript shows the

trial court only had the following brief exchange:

> THE COURT: In addition, the Court will also deny the request for visits between the juvenile [Anna], [Chris], and [Margaret] in reference to [respondent-mother]. The Court will also deny the request for visits in reference to [respondent-father] and [Anna].
> However, the Court will grant the request for visits between [Chris's biological father] and the juvenile [Chris] whereby he shall visit with this juvenile once per week for two hours, supervised by the Department.
>
> . . .
>
> The motion to place the juveniles [Anna] and [Chris] with [respondent-father's] relatives is denied. The request to attend medical appointments is also denied. However, the request for shared parenting is granted, via e-mail only.
>
> . . .
>
> [DHHS Attorney]: And Your Honor, a visitation order for [Margaret's biological father].
>
> THE COURT: No visits.

The trial court made no findings or conclusions regarding why only one parent, Chris's biological father, was entitled to supervised visitation with his child, but the other three biological parents were denied any and all visitation, placement with children's family or relatives, or presence and participation in their medical care. For example, the trial court found respondent-father had complied with his case plan, had maintained employment, had provided safe housing, and had significantly fewer legal infractions on his record than Chris's biological father, who was provided

- 10 -

visitation. Neither the record nor the order provides a finding or explanation for the objectively disparate treatment accorded to Chris's biological father and the other three parents involved in the matter, nor the denial of family or relative placement, and participation in the children's medical appointments.

The trial court failed to make specific determinations for each parent regarding unfitness or conduct inconsistent with their parental rights and, only after then, to determine whether parental visitation was in the best interests of each of their children. This absence demonstrates the trial court failed to make the required findings and conclusions and prejudicially erred in disposition. These failures: render the order manifestly unsupported by reason, demonstrate the conclusions of law were unsupported, lack legal validity, and constitutes an abuse of discretion. *In re K.N.L.P.*, 380 N.C. at 759, 869 S.E.2d at 646; *In re J.L.* 264 N.C. App. at 421, 826 S.E.2d at 268.

## IV. Conclusion

After reviewing the remaining dispositional questions remanded to this Court, we hold the trial court failed to make required and specific determinations of fact to demonstrate the trial court made supported conclusions of law. Upon remand, the trial court is to make the required findings of fact and conclusions of law concerning visitation, family placement, and parental involvement in medical treatment in the best interests of *each child for each respective parent of each child*. *In re K.N.L.P.*, 380 N.C. at 759, 869 S.E.2d at 646; *In re J.L.* 264 N.C. App. at 421, 826 S.E.2d at 268.

We vacate those dispositional portions of the 23 October 2019 Adjudication and Disposition Order and remand for further proceedings. *It is so ordered.*

VACATED IN PART AND REMANDED.

Chief Judge STROUD and Judge HAMPSON concur.