IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-289

Filed 5 March 2025

Harnett County, No. 22JA2-420

IN THE MATTER OF: D.E.

Appeal by respondent-father from order entered 22 December 2023 by Judge Resson O. Faircloth in District Court, Harnett County. Heard in the Court of Appeals 13 February 2025.

*Staff Attorney Duncan B. McCormick for petitioner-appellee Harnett County Department of Social Services.*

*Ward and Smith, P.A., by Mary V. Cavanagh, for guardian ad litem.*

*Garron T. Michael for respondent-appellant father.*

STROUD, Judge.

Respondent-Father appeals from the trial court's permanency planning order granting guardianship of the minor child to foster parents and ceasing reunification efforts with Father. Father contends the trial court abused its discretion by failing to order a minimum frequency of visitation and leaving supervised visitation in the discretion of Foster Parents. Because the trial court made sufficient findings of fact and conclusions of law to deny visitation to Father entirely and concluded that it was not in the child's best interest to order specific visitation for Father, it did not err by authorizing Foster Parents to allow supervised visitation as agreed between them

and Father. We affirm the trial court's permanency planning order.

## I. Background

On 29 December 2021, the Johnston County Department of Social Services ("JCDSS") filed a juvenile petition alleging the minor child, "Devin,"[1] was a neglected and dependent juvenile. That same day, an order was entered placing Devin in the nonsecure custody of JCDSS. In a hearing on 5 January 2022, the trial court in Johnston County found Devin had been living in Harnett County with one or both of his parents since his removal on 29 December 2021. The trial court entered an order transferring jurisdiction to Harnett County.

On 7 January 2022, a subsequent juvenile petition was filed by the Harnett County Department of Social Services (hereinafter "DSS"), also alleging Devin to be a neglected and dependent juvenile. The trial court in Harnett County issued an order granting DSS nonsecure custody of Devin that same day. Devin was placed in the home of Foster Parents on 4 March 2022, "pending further proceedings."

An adjudication and disposition hearing was held on 11 March and 25 March 2022. On 4 January 2023, the trial court entered an order adjudicating Devin to be a neglected juvenile. As grounds for this adjudication, the trial court made these relevant findings of fact:

> 35. [Devin's] meconium screen was positive for methamphetamines and amphetamines.

---

[1] Stipulated pseudonyms are used to protect the identity of minor children. *See* N.C. R. App. P. 42.

36. The mother tested positive for amphetamines on September 23, 2021, November 12, 2021, and November 24, 2021.

37. The mother reported taking Sudafed almost daily during the pregnancy.

38. The mother at this hearing testified that she used methamphetamines during the pregnancy.

39. The mother used methamphetamine as recently as one week prior to [Devin's] birth.

. . . .

42. The mother and [F]ather have a significant history of domestic violence[.]

. . . .

46. On December 7, 2021, a social worker made contact with the mother. The mother reported that she and . . . [F]ather had a history of physical and verbal altercations. She acknowledged a history of obtaining domestic violence protective orders against . . . [F]ather.

. . . .

52. The parents had a verbal altercation at the Johnston County Courthouse on January 5, 2022. A Johnston County social worker observed this altercation.

. . . .

54. [Devin] lived in an environment injurious to his welfare in the care of the parents. [Devin] would have lived in an environment injurious to his welfare if placed in the care of the parents at the time of the filing of the January 7, 2022 juvenile petition in Harnett County.

In its dispositional order, the trial court concluded "[i]t is in the best interests of [Devin] to award legal and physical custody to [DSS]" and further "in the best

interests of [Devin]" to maintain placement with Foster Parents. The trial court also granted both parents supervised visitation of a minimum of two hours per week to be supervised by either Foster Parents, DSS, or "an adult approved by DSS and the GAL."

The trial court held a permanency planning hearing on 17 October 2023. Neither the mother nor Father were present for this hearing, but were both represented by counsel. Following this hearing, the trial court entered an order on 22 December 2023 awarding primary care and guardianship to Foster Parents. Father timely appealed this permanency planning order on 17 January 2024. The mother did not appeal.

## II. Permanency Planning Order

On appeal, Father challenges the trial court's permanency planning order as it relates to his visitation rights. Father does not challenge any of the trial court's nearly nine single-spaced pages of findings of fact, so the findings are binding on appeal. *See In re J.M.*, 384 N.C. 584, 591, 887 S.E.2d 823, 828 (2023) ("Uncontested findings of fact are . . . binding on appeal." (citation omitted)). First, Father challenges one of the trial court's conclusions as being unsupported by the evidence and "directly in contradiction to the trial court's own findings." Second, Father argues the trial court's decree failed to comply with North Carolina General Statute Section 7B-905.1 in not establishing a "minimum frequency of visitation." Finally, he argues the trial court impermissibly awarded Foster Parents excessive power and control in

determining Father's ability to exercise visitation with Devin. We disagree and affirm the trial court's permanency planning order.

## A. Standard of Review

This Court "review[s] disposition orders, including visitation determinations, for abuse of discretion. When reviewing for abuse of discretion, we defer to the trial court's judgment and overturn it only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *In re K.W.*, 272 N.C. App. 487, 495, 846 S.E.2d 584, 590 (2020) (citations omitted). Further, "[a]ppellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." *In re R.A.H.*, 182 N.C. App. 52, 57-58, 641 S.E.2d 404, 408 (2007) (citation and quotation marks omitted). "Unchallenged findings of fact are binding on appeal. Whether the trial court's findings of fact support its conclusions of law is reviewable *de novo*. If the trial court's uncontested findings of fact support its conclusions of law, we must affirm the trial court's order." *Isom v. Duncan*, 279 N.C. App. 171, 175, 864 S.E.2d 831, 836 (2021) (citations and quotation marks omitted).

## B. Visitation

Father challenges the trial court's Conclusion of Law 10 as being unsupported by competent evidence and "in contradiction" to the trial court's findings. Conclusion of Law 10 reads: "It is not in the best interests of [Devin] to award . . . [F]ather a minimum period or a minimum frequency of visitation. Supervised visitation and

contact should be authorized as set forth in the decretal." Father's argument focuses on the evidence more than the trial court's findings of fact, and Father challenged none of the findings of fact as unsupported by the evidence. Under our standard of review, we must determine if the trial court's unchallenged findings support its conclusion of law. *See id.*

Under North Carolina General Statute Section 7B-905.1, "[a]n order that removes custody of a juvenile from a parent . . . or that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, *including no visitation.*" N.C. Gen. Stat. § 7B-905.1(a) (2023) (emphasis added). Further, "the court may prohibit visitation or contact by a parent when it is in the juvenile's best interest consistent with the juvenile's health and safety." *In re J.L.*, 264 N.C. App. 408, 421, 826 S.E.2d 258, 268 (2019) (citations omitted).

In making his argument, Father directs us to the testimony of Ms. Taylor, social worker for DSS. Ms. Taylor testified Father, generally, "pays attention to [Devin's] needs[]" and that "there does appear to be a bond between [Devin and Father]." Further, when asked if DSS's "recommendation is that there be no visits?" Ms. Taylor responded "[n]ot that there are not visits, just that the foster parent and the parent could work out visit times." Father argues "[n]othing contained in Ms. Taylor's testimony, [n]or any other evidence presented for that matter, indicated any concerns or any justification to curtail Father's ongoing visitation." We note that the

trial court found Father had not exercised his "ongoing visitation" established in the prior order since January 2023. And the trial court's findings of fact provide abundant justification for curtailing Father's visitation.

This Court has upheld limitations on parental visitation rights when a trial court's findings support its conclusions that visitation would be inconsistent with the best interests of the juvenile. *See In re N.L.M.*, 283 N.C. App. 356, 373, 873 S.E.2d 640, 650 (2022). Findings that a parent did not make adequate progress with their case plan, including the resolution of issues pertaining to domestic violence and substance abuse, support a conclusion that visitation would not be in the best interests of a juvenile. *See In re J.L.*, 264 N.C. App. at 422, 826 S.E.2d at 268.

Here, the trial court made a finding consistent with Ms. Taylor's testimony that "[t]here is a bond [between Devin and Father]." In this finding, however, the trial court also noted "[F]ather has difficulty consoling [Devin] when [Devin] cries." In non-jury proceedings, the trial court is required to "weigh and consider all competent evidence[]" in making its ultimate determinations. *In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (citation omitted). "Moreover, the trial court's decisions as to the weight and credibility of the evidence, and the inferences drawn from the evidence, are not subject to appellate review." *In re J.M.*, 384 N.C. at 591, 887 S.E.2d at 828 (citation, quotation marks, and brackets omitted).

In support of its conclusion as to Father's visitation rights, the trial court also made the following relevant findings:

ss. . . . [F]ather has not participated in any substance abuse or mental health treatment.

tt. . . . [F]ather tested positive for marijuana, amphetamines, and methamphetamines on April 26, 2022.

uu. . . . [F]ather missed screens on March 22, May 31, June 28, September 27, and November 1, 2022.

vv. . . . [F]ather declined to cooperate with a hair follicle screen on January 9, 2023. He cooperated with an oral swab screen, which was negative.

ww. . . . [F]ather missed screens on January 24, February 23, and March 13, 2023.

xx. . . . [F]ather cooperated with an oral swab screen on March 28, 2023. He tested positive for marijuana.

yy. . . . [F]ather declined to cooperate with a hair follicle screen on March 28, 2023.

zz. . . . [F]ather did not show for a drug screens (sic) on July 25 and September 25, 2023.

. . . .

ccc. . . . [F]ather started the HALT domestic violence education program. He was terminated from HALT for failure to comply with their drug screening.

. . . .

iii. . . . [F]ather told a DSS social worker that he was working in construction. He has not provided DSS or the court with any proof of employment.

jjj. In August 2022, . . . [F]ather was charged with assault on a female. The mother was the alleged victim. The incident happened on July 29, 2022. Law enforcement saw the mother bleeding from her knee and elbow. Law enforcement had to separate the parents due to them arguing. The mother told officers that . . . [F]ather threw

the mother in the road and drug her across the road. She said that the argument started early in the morning.

. . . .

mmm. On May 8, 2023, the mother told a social worker that she and . . . [F]ather had gotten into an argument. . . . [F]ather hit and bit the mother. The mother charged . . . [F]ather with assault on a female. The mother later asked the State to drop the charge. The State took a voluntary dismissal.

. . . .

qqq. Pursuant to Section 7B-906.2(d), the court finds:

> . . . .
>
> D. The parents' failure to make significant progress is conduct that is inconsistent with the health and safety of [Devin].

. . . .

uuu. By clear, cogent, and convincing evidence, the court finds that the parents neglected [Devin] and acted inconsistently with their respective parental rights (including constitutional rights), duties, and obligations.

In addition to the above findings regarding Father's lack of progress with his case plan, the trial court also found there were existing communication and coordination issues between Father and Foster Parents. The trial court took judicial notice of the disposition order entered on 4 January 2023 based on a hearing held in March 2022; this order originally established supervised visitation for both parents. The trial court found that Foster Parents had begun supervising visitation for both the mother and Father on 4 March 2022 under the previous order. Father was

granted a minimum of 2 hours per week visitation "if supervised by" Foster Parents. The order also authorized specific minimum visitation which could be supervised by either DSS or "an adult approved by DSS and the GAL." However, the trial court found Foster Parents "have not supervised any visits with . . . [F]ather since January 2023. They do not have a relationship with . . . [F]ather. . . . [F]ather has blocked . . . [Foster Parents] from texting him. [Foster Parents] are not willing to supervise. . . [F]ather's visitation or contact."

Father did not challenge these findings and such "[u]ncontested findings of fact are . . . binding on appeal." *See In re J.M.*, 384 N.C. at 591, 887 S.E.2d at 828 (citation omitted). Under these findings, the trial court did not abuse its discretion in concluding "[i]t is not in the best interests of [Devon] to award . . . [F]ather a minimum period or a minimum frequency of visitation." Though the trial court found some bond exists between Father and Devin, the trial court's other findings as to Father's lack of progress with his case plan, and continued issues with substance use and domestic violence, and his failure to take advantage of the supervised visitation he had been granted support limiting his visitation rights in accordance with Devin's best interests.

Father next argues the trial court's decretal failed to comply with North Carolina General Statute Section 7B-905.1(c) in that it "specifically denied both a minimum period and frequency for [Father's] visitation." Specifically, Father contends he "did not forfeit his right to visitation[,]" and absent such findings, Father

was entitled to a provision in the order specifically outlining his minimum visitation rights.  We disagree.

When a trial court revokes parental custody or continues placement of the juvenile outside the parent's home, the trial court's order must "establish a visitation plan for parents unless the trial court finds that the parent has forfeited their right to visitation *or that it is in the child's best interest to deny visitation*."  *In re M.S.*, 289 N.C. App. 127, 145, 888 S.E.2d 242, 253 (2023) (emphasis added) (citation and quotation marks omitted).

> In the absence of findings that the parent has forfeited his or her right to visitation or that it is in the child's best interest to deny visitation, the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place, and conditions under which such visitation rights may be exercised.

*Id.* (citation, quotation marks, brackets omitted).  The trial court did not find Father had forfeited his right to visitation, but it did conclude "[i]t is not in the best interests of [Devin] to award . . . [F]ather a minimum period or a minimum frequency of visitation."  The trial court also found "[b]y clear, cogent, and convincing evidence" Father "acted inconsistently with [his] parental rights (including constitutional rights), duties, and obligations."  Accordingly, under North Carolina General Statute Section 7B-905.1(c), the trial court here was not required to "safeguard . . . [Father]'s visitation rights[,]" *id.*, by outlining a "minimum frequency and length of . . . visits" as it would be inconsistent with the best interests of Devin.  *See* N.C. Gen. Stat. § 7B-

905.1(c).

Finally, Father argues the trial court erred in delegating authority to set visitation to Foster Parents. As a general rule, we agree with Father's contention it is improper for a trial court to award custodians of a child full authority to determine a parent's ability to exercise their visitation rights – but this rule applies only if the trial court has granted the parent visitation. Here, the trial court did not grant Father any visitation but only authorized Foster Parents to allow Father to see Devin, as long as the visit was supervised and Father was "not under the influence of an impairing substance."

This Court has held it to be improper for a trial court to "delegate its authority to set visitation to the custodian of the child[.]" *In re N.K.*, 274 N.C. App. 5, 11, 851 S.E.2d. 389, 394 (2020) (citation omitted).

> We do not think that the exercise of this judicial function [in determining visitation rights] may be properly delegated by the court to the custodian of the child. Usually those who are involved in a controversy over the custody of a child have been unable to come to a satisfactory mutual agreement concerning custody and visitation rights. To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian.

*In re Custody of Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971).

"*If the district court orders visitation*, the court 'shall specify the minimum frequency and length of the visits and whether the visits shall be supervised.'" *In re*

*N.K.*, 274 N.C. App. at 11, 851 S.E.2d at 394 (emphasis added) (quoting N.C. Gen. Stat. § 7B-905.1(d)).  In *In re N.K.*, this Court determined "the district court neither completely denied visitation nor set out terms for visitation but instead delegated both the authority to allow visitation and the terms of that visitation to three therapists who worked with [the] respondent-mother and each child." *Id.* at 12, 851 S.E.2d at 394.

Here, as discussed above, the trial court *did* find it in the best interests of Devin to deny Father's visitation, distinguishing the present case from *In re N.K.* where the district court did not "completely den[y] visitation[.]" *See id.*  The trial court also found that Father had acted "inconsistently with [his] parental rights (including constitutional rights), duties, and obligations."

In *Routten v. Routten*, our Supreme Court held

> that in light of the trial court's authority to deny *any* visitation to [the] defendant pursuant to N.C.G.S. § 50-13.5(i), any delegation of discretion to [the] plaintiff to allow *some* visitation is mere surplusage, albeit admittedly confusing. The trial court had already determined that it was not in the children's best interests to have visitation with [the] defendant. Although it is curious that the trial court would afford an opportunity for [the] defendant to have visitation with the children at the discretion of [the] plaintiff after denying visitation rights to her, nonetheless we choose to interpret the trial court's openness to the potential prospect of [the] defendant's ability to see her children as a humane accommodation rather than as an error of law.

374 N.C. 571, 579, 843 S.E.2d 154, 159-60 (2020) (emphasis in original) (citation and

quotation marks omitted).

Here, the trial court's order specifically outlines that "[Foster Parents] are *authorized, but not required*, to arrange for supervised visitation and contact[.]" (Emphasis added.) As did our Supreme Court in *Routten*, we consider this authorization of Foster Parents to allow supervised visitation "as a humane accommodation rather than an error of law." *Id.* at 579, 843 S.E.2d at 160. The trial court made sufficient findings to support the conclusion of denying Father's visitation rights as being in the best interests of Devin. Based on the trial court's findings and conclusions, the trial court was not required to grant Father *any* opportunity for visitation. But the trial court graciously awarded Father the opportunity to try to improve his relationship with Foster Parents and authorized them to allow supervised visitation. And even if Foster Parents remain unwilling to supervise visitation, Father still has the opportunity to file a motion for review of visitation in the future.

## III. Conclusion

The trial court did not abuse its discretion in denying Father "a minimum period or a minimum frequency of visitation" but authorizing Foster Parents to allow supervised contact. The trial court made sufficient findings to support its conclusion that this limitation would be in the best interests of Devin. Further, the trial court did not abuse its discretion by authorizing Foster Parents to allow Father supervised visitation if he and Foster Parents agree to do so. We affirm the trial court's

permanency planning order.

AFFIRMED.

Judges ARROWOOD and FREEMAN concur.